**In the Matter of MAJESTIC ENERGY**
**CORPORATION, Debtor.**

**FEDERAL DEPOSIT INSURANCE**
**CORPORATION, Appellant,**

v.

**MAJESTIC ENERGY CORPORATION**
**and J.C. Templeton, Appellees.**

No. 87-4466
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1988.

Joseph L. Shea, Jr., Clair F. White, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for appellant.

Randall S. Davidson, Allison A. Jones, Russell O. Brabham, John L. Schober, Jr., Shreveport, La., for appellees.

Before REAVLEY, CAROLYN DINEEN KING[*] and JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal arises from a district court affirmance of a bankruptcy court determination that the Federal Deposit Insurance Corporation's rights as pledgee under a pledge instrument do not extend to new common stock issued to the pledgor under a bankruptcy plan of reorganization in satisfaction of an unrelated unsecured claim. We affirm.

## I.

By a pledge instrument dated December 7, 1983 (the "Pledge"), J.C. Templeton pledged 600 shares of preferred stock of Majestic Energy Corporation ("Majestic") to Bossier Bank & Trust Company ("BB & T"). The Pledge contained the following pertinent language:

(7) In the event that, during the term of this pledge, any share dividend, reclassification, readjustment, or other change is declared or made in the capital structure of Majestic, or any subscription warrant or other option is exercisable with respect to the shares pledged hereunder, all new, substituted, or additional shares, or other securities, issued by reason of any such change or option shall be held by the Bank under the terms of this

* Formerly Carolyn Dineen Randall.

agreement in the same manner as the shares originally pledged hereunder.

When BB & T was closed by the Louisiana Office of Financial Institutions in June 1986, the FDIC was appointed receiver. Under a purchase and assumption transaction, any and all rights of BB & T under the Pledge were transferred to FDIC in its corporate capacity.

Majestic, a closely held oil and gas company, filed for relief under Chapter 11 of the Bankruptcy Code on March 5, 1986. BB & T (and subsequently the FDIC) was permitted to intervene in the proceedings as a party in interest. In April 1986, Majestic filed a plan of reorganization (the "Plan"). Pertinent to this appeal, the Plan provided (1) that the holders of Majestic preferred stock (class 7 claims) were paid $15,000 cash and their interests were terminated upon confirmation of the Plan; (2) that Templeton, in satisfaction of 85 percent of his unsecured claims[1] (class 6 claims), received 100% of the new common stock of reorganized Majestic; and (3) that Templeton, in satisfaction of the remaining 15 percent of his unsecured claims, received a subordinated promissory note of Majestic in the amount of approximately $536,000.

On August 11, 1986, the FDIC initiated an adversary proceeding in Majestic's bankruptcy against Majestic and Templeton, seeking a determination that the new common stock should be distributed to the FDIC rather than to Templeton, based on its superior rights under the Pledge, and a preliminary injunction preventing Majestic's delivery of the new common stock to Templeton pending a determination of FDIC's interest in the stock. Following a period of considerable discovery and objections to the Plan by the FDIC, the FDIC agreed to an Order of Confirmation of the Plan subject to a reservation of the right to pursue matters raised in the adversary proceeding. The bankruptcy court denied the

relief sought by the FDIC, concluding that the Pledge does not encompass the new common stock issued to Templeton under the Plan. The FDIC then filed a notice of appeal to the district court on December 17, and although a stay of the judgment was sought from the bankruptcy court and the district court pending appeal to the district court, the efforts were denied and the lower courts eventually permitted the delivery of the new common stock of Majestic to Templeton over FDIC's objection. The district court affirmed the ruling of the bankruptcy court and FDIC now appeals.

## II.

 Our first concern on this appeal is whether the bankruptcy court, at the time it rendered its judgment, had jurisdiction to determine the effect of an agreement establishing a possible superior claim to stock in the debtor corporation issued under the plan of reorganization to a creditor of the debtor corporation.

Bankruptcy courts are courts of limited jurisdiction, with their scope defined by statute. *In re Paso Del Norte Oil Co.*, 755 F.2d 421, 423–24 (5th Cir.1985). Where a federal court rules in a matter over which it does not have jurisdiction, its decisions, opinions and orders are without effect. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir.1981).

The Bankruptcy Amendments and Federal Judgeship Act of 1984 provides, in part, that district courts have jurisdiction of all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In response to the Supreme Court's holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982),[2] the 1984 Act divides its jurisdictional grant into "core" proceedings, which the

---

**1.** These unsecured claims totalling $3,576,295.28 arose from business loans by Templeton to Majestic and its subsidiaries and were evidenced by promissory notes.

**2.** In *Marathon,* the Supreme Court declared the jurisdictional provision of the Bankruptcy Reform Act of 1978 unconstitutional because it impermissibly vested Article III powers in Article I judges. *Marathon,* 458 U.S. at 87, 102 S.Ct. at 2880.

district court can refer to a bankruptcy judge for full adjudication, and "otherwise related" (non-core) proceedings, over which a bankruptcy judge may exercise only limited power. *In re Wood*, 825 F.2d 90, 91 (5th Cir.1987); 28 U.S.C. § 157.[3] Our court has previously read both *Marathon* and the 1984 Act as restricting the placement of jurisdiction in bankruptcy courts (non-Article III courts), rather than as restricting the scope of bankruptcy jurisdiction. *Wood*, 825 F.2d at 93.

Analysis of bankruptcy court jurisdiction in a particular action involves a two-step inquiry. First, whether federal jurisdiction over bankruptcy cases and proceedings exists is determined under § 1334(b), which is to be read as a broad grant of jurisdiction. *Id.* at 92. Second, if jurisdiction is found, § 157 is examined to determine the extent to which a bankruptcy court, rather than a district court, can adjudicate the matter, which depends on whether the matter is a core or non-core proceeding. In this case, the parties consented to the matter being determined by the bankruptcy judge. Thus, even if the matter is a non-core proceeding, a determination by the bankruptcy judge was proper as long as the matter was at least related to the bankruptcy case. *See* 28 U.S.C. § 157(c)(2). Therefore, the key issue in this case is whether bankruptcy jurisdiction attached. Since § 1334(b) defines jurisdiction conjunctively as either "arising under," "arising in" or "related to" a case under Title 11, we need only determine whether this matter is at least related to the bankruptcy. *Wood*, 825 F.2d at 93.

The 1984 Act does not define "related" matters. The court in *Wood* adopted the widely accepted Third Circuit test for determining whether a proceeding is "related to" the bankruptcy case: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted)). The *Pacor* court elaborated on this inquiry by stating: "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

Our examination of FDIC's action leads us to conclude that the matter is related to Majestic's bankruptcy case. The outcome of the action could bind Majestic in that it could affect a course of action of debtor Majestic. *See Pacor*, 743 F.2d at 995. FDIC named Majestic as a party to the proceeding and sought to enjoin it from delivering the new common stock to Templeton pending a determination of FDIC's interest in the stock. If FDIC were successful in establishing a superior claim to possession under the Pledge, the actions of Majestic, and the handling and administration of the Plan, would be affected.

We have often said that a debtor corporation has no property interest in the

3. Section 157 provides in pertinent part:
 (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
 (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 . . . .
 (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
 (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

shares of its stock owned by shareholders. *Paso Del Norte*, 755 F.2d at 424. However, at the point the shares were issued but undelivered to Templeton, Majestic had possession of the stock, and delivery was necessary to administer the estate pursuant to the Plan (the partial satisfaction of Templeton's unsecured claim). Whether the undelivered stock was property of the estate is not a critical inquiry, since the Bankruptcy Act of 1978 eliminated § 711 of the Bankruptcy Act of 1898, which had limited bankruptcy jurisdiction solely to the debtor and his property. *Compare Paso Del Norte*, 755 F.2d at 424 (holding under the 1898 Act that neither the debtor nor its property was involved in stock ownership dispute) *with Pacor*, 743 F.2d at 994 (stating, under the 1978 Act, that "the proceeding need not necessarily be against the debtor or against the debtor's property").

As stated above, the proper inquiry now is whether the matter is "related to" the bankruptcy. Because the execution of the Plan and Majestic's actions in administering the estate could conceivably have been affected by the outcome of FDIC's proceeding, we find that the action is related to the bankruptcy within the meaning of § 1334(b). Thus, bankruptcy jurisdiction exists. Further, placement of that jurisdiction in the bankruptcy court in this case is proper because all parties consented to the bankruptcy judge deciding the matter. *See* 28 U.S.C. § 157(c)(2).

### III.

■ Coming to the merits, the primary issue is whether the Pledge covers the new common stock issued by Majestic to Templeton pursuant to the Plan. As noted above, Templeton was the holder of 600 shares of preferred stock of Majestic covered in the Pledge and was also an unsecured creditor of Majestic holding claims in the approximate amount of $3,500,000. Under the terms of the Plan, Templeton was entitled to receive (i) in cancellation of the preferred stock of Majestic held by him, his pro rata share of the $15,000 to be distributed to the holders of all of Majestic's preferred stock and (ii) in cancellation of

the unsecured debt of Majestic held by him, 100% of the new common stock of Majestic and a subordinated promissory note.

The FDIC contends that the Pledge covers the new common stock issued by Majestic to Templeton pursuant to the Plan. By the pledge's express terms, the FDIC argues, all securities issued by reason of any change in the "capital structure" of Majestic are covered by the Pledge. Since "capital structure" includes debt as well as equity, the securities issued to Templeton, by reason of changes in either, fall within the scope of the Pledge. The bankruptcy court and the district court held that the new common stock of Majestic was not issued to Templeton in replacement of or substitution for the Majestic preferred stock owned by Templeton prior to the filing under Chapter 11 and that the language of the Pledge cannot be extended, as the FDIC has argued, to cover the new common stock of Majestic issued upon cancellation of Templeton's indebtedness to Majestic under the Plan.

We agree with the bankruptcy and district courts that the Pledge did not cover indebtedness owed to Templeton by Majestic and that it cannot be interpreted to cover the new common stock issued in cancellation of that indebtedness. We note that BB & T could have demanded a pledge of that indebtedness as well as the preferred stock, and had it done so, the pledge would have covered the new common stock of Majestic issued upon cancellation of that indebtedness. But as the Pledge was confected, it covers only the preferred stock, and the FDIC succeeds only to Templeton's pro rata share of the cash distribution to be made to the holders of the preferred stock pursuant to the Plan.

We need not and do not address the bankruptcy court's interpretation of 11 U.S.C. § 1141.

AFFIRMED.