United States Court of Appeals,

Fifth Circuit.

No. 92-5745.

In the Matter of Jimmie L. QUERNER, Sr., Debtor.

Thera QUERNER, Appellant,

v.

Jimmie L. QUERNER, Jr., Appellee.

Nov. 26, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before SNEED[*], REYNALDO G. GARZA and JOLLY, Circuit Judges.

SNEED, Circuit Judge:

Appellant Thera Querner challenges a district court judgment affirming a bankruptcy court's division of the probate estate of deceased debtor Jimmie L. Querner, Sr., after the close of Chapter 13 proceedings. Because the bankruptcy court abused its discretion in retaining jurisdiction over the probate estate, we reverse and remand.

I.

FACTS AND PRIOR PROCEEDINGS

As daughter and legal guardian of Jimmie L. Querner, Sr., Thera Querner (Thera) filed for bankruptcy on her father's behalf in March 1989. Querner, Sr., died before the reorganization was complete. Pursuant to his will, the Probate Court of Bexar County, Texas, appointed Thera and her brother, Jimmie L. Querner, Jr., (Jimmie) co-independent executors of their father's estate.

Meanwhile, the bankruptcy court proceeded with the reorganization of Querner, Sr.'s bankruptcy estate.[1] In January 1990, the bankruptcy court confirmed a Chapter 13 Plan. In March the court established dispute resolution procedures and appointed an intermediary to resolve disputes

---

[*]Senior Circuit Judge of the Ninth Circuit, sitting by designation.

[1]Bankruptcy Rule 1016 gives a bankruptcy court discretion to dismiss or continue a bankruptcy case after the death of a debtor. Bankr.R. 1016.

between Jimmie and Thera regarding their duties as executors. Finally, on September 27, 1990, the bankruptcy court entered the Order to Close Chapter 13, subject to the bankruptcy Trustee completing certain payments and filing a final report.

Despite the entry of the Order to Close the bankruptcy proceeding, the bankruptcy court replaced the original intermediary and appointed a substitute intermediary to "expeditiously conclude the probate aspects" of the case on October 2, 1990. The Trustee filed his Final Report and Account the following day. Nonetheless, on November 7, more than a month after the Order to Close the Chapter 13 case, the court entered an order granting Jimmie's motion to retain jurisdiction for a limited purpose. On December 17, 1990, in an effort to quell continuing disputes between the Querners, the court *sua sponte* expanded the substitute intermediary's authority, giving him broad power to make recommendations concerning the expeditious closing of the probate estate and the disposition and division of assets.

The primary point of dispute between Thera and Jimmie was the partition of the Q Bar Q Ranch (the Q Bar Q), a 900-acre ranch in Gillespie and Kerr counties in Texas. In a report concerning the partition of the Q Bar Q, the substitute intermediary made two proposals, one of which he favored over the other. In an effort to evaluate the two proposals, the bankruptcy judge, together with two U.S. marshals, visited the Q Bar Q. Ultimately, the judge accepted the proposal that the substitute intermediary did not favor. On August 16, 1991, the bankruptcy court entered an order dividing the property and relieving the substitute intermediary of further duties.

Unhappy with the court's division, Thera filed a motion for new trial and a motion to dismiss for lack of subject matter jurisdiction. The bankruptcy court subsequently modified its August 16 order dividing the property: the court denied Thera's motion for a new trial, granted additional fees to both the substitute intermediary and his attorney, and granted additional fees to Jimmie's attorney. Thera appealed to the United States District Court for the Western Division of Texas, San Antonio Division. The district court affirmed the bankruptcy court's order. From this judgment and order, Thera appeals.

II.

DISCUSSION

The only issue on appeal is whether the bankruptcy court properly retained jurisdiction over the probate assets of the deceased debtor after the close of the Chapter 13 case. Because the bankruptcy court abused its discretion in retaining jurisdiction, we reverse and remand this case to the district court with instructions.

A.

Bankruptcy courts are courts of limited jurisdiction, whose scope is statutorily defined. *In re Majestic Energy Corp.,* 835 F.2d 87, 89 (5th Cir.1988). Where a federal court lacks jurisdiction, its decisions, opinions, and orders are void. *Id.* A district court has original, but not exclusive, jurisdiction of matters "arising under," "arising in," or "related to" a case under Title 11. 28 U.S.C. § 1334(b). Because section 1334(b) defines jurisdiction conjunctively, a district court has jurisdiction over the subject matter if it is at least related to the underlying bankruptcy. 835 F.2d at 90. A matter is "related to" a case under Title 11 if the outcome "could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987).

B.

In the instant case, the bankruptcy court clearly had jurisdiction over matters affecting the deceased debtor's estate while the Chapter 13 case was proceeding. The court had discretion under Bankruptcy Rule 1016 to continue the Chapter 13 case after the death of the debtor, and it had exclusive jurisdiction over the debtor's property during the pendency of those proceedings. Because ongoing disputes during active reorganization of the debtor's estate could conceivably have affected the handling and administration of the bankruptcy estate, the court's initial appointment of an intermediary to resolve disputes over the disposition of the deceased debtor's assets was "related to" the Chapter 13 case.

C.

The issue whether a bankruptcy court may retain jurisdiction over related matters after the underlying bankruptcy case is closed is a question of first impression in this circuit. We hold, in accord with the Third, Ninth and Eleventh Circuits, that as a general rule the dismissal or closing of

a bankruptcy case should result in the dismissal of related proceedings. *See In re Carraher,* 971 F.2d 327 (9th Cir.1992); *In re Morris,* 950 F.2d 1531 (11th Cir.1992); *In re Smith,* 866 F.2d 576 (3d Cir.1989). The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding. *Smith,* 866 F.2d at 580.

D.

Notwithstanding the general rule, however, nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case. *See* 11 U.S.C. § 349 (listing the effects of dismissal of the underlying bankruptcy case); *Morris,* 950 F.2d at 1534. The decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court. Absent abuse of that discretion, we will not reverse the bankruptcy court's decision. *See id.* In determining whether the bankruptcy court abused its discretion by retaining jurisdiction over related proceedings after dismissal of the underlying bankruptcy case, other circuits have analogized to cases concerning the authority of federal district courts to retain pendent state claims after federal claims have been dismissed. *Carraher,* 971 F.2d at 328; *Smith,* 866 F.2d at 580. The Supreme Court has held that a federal district court must consider four factors in deciding whether to retain jurisdiction over pendent state claims after the dismissal of federal claims: economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 353, 108 S.Ct. 614, 620-21, 98 L.Ed.2d 720 (1988).

E.

Applying these factors here, we find that the bankruptcy court abused its discretion. The record indicates that judicial economy did not favor retention of jurisdiction at the time the underlying bankruptcy case terminated. Although the bankruptcy court was familiar with the assets of the bankruptcy estate, the bankruptcy judge had no special knowledge regarding the disputes between Thera and Jimmie. Other than the initial appointment of an intermediary, the bankruptcy judge expended few judicial resources on the probate proceedings prior to the closure of the Chapter 13 case. It was only *after* the bankruptcy judge decided to retain jurisdiction over the probate estate that

he appointed a substitute intermediary,[2] heard proposals for the division of the Q Bar Q, and ultimately visited the ranch. *Cf. In re Stardust Inn, Inc.,* 70 B.R. 888, 891 (Bankr.E.D.Pa.1987) (retaining jurisdiction where the related matter had "already been fully tried with all parties simply awaiting the decision" of the court). Moreover, the resolution of the disputes between Thera and Jimmie and the subsequent division of the probate estate could have had no possible effect on the bankruptcy case. Upon confirmation of the Chapter 13 Plan, the bankruptcy estate revested in the debtor,[3] and the creditors were entitled to no proceeds out of the probate estate. No motion was made to reopen the estate.

Likewise, any inconvenience to Thera and Jimmie resulting from the bankruptcy court's refusal to retain jurisdiction would have been slight. Prior to the closing of the bankruptcy case, the probate court had admitted Querner, Sr.'s will to probate, appointed Thera and Jimmie co-independent executors, and issued letters testamentary. The probate case never was removed from the probate court. As to fairness, there is no evidence that remanding the proceedings to the probate court would have resulted in undue delay. Furthermore, the probate court presumably had greater expertise in probate matters than did the bankruptcy court. Finally, as a matter of comity, the bankruptcy court should have left the division of the deceased debtor's probate estate to the probate court.

Considerations of judicial economy, convenience, fairness, and comity do not support the bankruptcy court's retention of jurisdiction over the probate estate.[4] Therefore, the bankruptcy court

---

[2]The efforts of the substitute intermediary are not necessarily lost if the assets are divided by a probate court rather than a bankruptcy court. The probate court can still make use of the substitute intermediary's proposals in dividing the probate estate.

[3]Section 1327 provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327. Appellee's contention that the bankruptcy court properly retained jurisdiction to preserve a res in its custody is without merit. The bankruptcy court did not have constructive or actual possession of the probate assets after the Chapter 13 case closed in September of 1990.

[4]The facts of the instant case are distinguishable from those of *Smith, Morris,* and *Carraher.* In those cases, judicial economy and convenience favored retention of jurisdiction, where the related matters had been pending for four or more years at the time the underlying bankruptcy cases were dismissed. *In re Carraher,* 971 F.2d 327 (9th Cir.1992) (six years); *In re Morris,* 950 F.2d 1531 (11th Cir.1992) (six years); *In re Smith,* 866 F.2d 576 (3d Cir.1989) (four years). Here, a little over a year elapsed between the time of the debtor's death and the close of Chapter

abused its discretion in retaining jurisdiction over the probate estate after the close of the underlying bankruptcy case. Consequently, we reverse the district court order and instruct the district court to direct the bankruptcy court to transfer the assets of the probate estate to the Probate Court of Bexar County, Texas. The transferred assets are to be calculated as the amount of the estate as it existed on September 27, 1990, less costs necessary to preserve the assets since that date, but exclusive of any costs incurred in the effort to resolve disputes between Thera and Jimmie Querner, Jr., that continued after the closing of the bankruptcy estate.

REVERSED and REMANDED.

13 proceedings.