UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 98-10213

———————————

IN THE MATTER OF: R. DANIEL BASS, JR.,

Debtor,

RICHARD D. BASS; HARRY W. BASS, JR.; HARRY
M. WHITTINGTON; FRED R. DEATON, JR., Trustee,
On Behalf of Richard D. Bass Trust No. 2;
Corporate & Trustee Services, Inc.,

Appellants,

versus

GEORGE DENNEY; JOYCE DENNEY,

Appellees.

- - - - - - - - - - -

Appeal from the United States District Court
for the Northern District of Texas

- - - - - - - - - - -
April 15, 1999

Before HIGGINBOTHAM, JONES,* and WIENER, Circuit Judges

WIENER, Circuit Judge.

This appeal arises from the efforts of Appellees George and Joyce Denney ("the Denneys") to collect an agreed non-dischargeable judgment that they obtained against R. Daniel Bass, Jr. ("the Debtor") in his Chapter 7 bankruptcy proceedings in Utah. After the Debtor's Utah bankruptcy proceeding was completed, the Denneys filed the instant garnishment and injunction suit against the

_____

* Concurring in section IIB and the judgment only.

Appellants (collectively, "the Trustees") in the Bankruptcy Court for the Northern District of Texas, where the Denneys had

registered their Utah judgment.  The Trustees ask us to vacate a mandatory injunction entered against them by the Bankruptcy Court in Texas which commands the Trustees henceforth to furnish the Denneys and their counsel written and oral notice 72 hours in advance of each intended discretionary distribution to the Debtor, who is the primary beneficiary of the Trust.  The Trustees attack that ruling on two fronts:  (1) The bankruptcy court in Texas does not have jurisdiction to enforce collection of the subject judgment; and (2) the injunction is invalid as a matter of law. Agreeing with both contentions, we reverse the bankruptcy court and render judgment in favor of the Trustees, vacating the injunction.

I.

Facts and Proceedings

In the 1950s, the Debtor's grandparents ("Settlors") created several irrevocable, fully discretionary "spendthrift trusts" pursuant to Texas law, one for the primary benefit of each of their grandchildren.  One of those trusts ("the Trust") was created for the primary benefit of the Debtor. Decades later, the Denneys made loans on the strength of the Debtor's guaranty, which loans were never repaid.  Financial representations made by the Debtor at the time of his guaranties proved to have been materially false and misleading.

In 1992, the Debtor filed a voluntary petition in bankruptcy in the District of Utah, seeking protection under Chapter 7 of the United States Bankruptcy Code.[1] The Denneys initiated an adversary proceeding seeking to recover the amounts owed by the Debtor and to have these obligations excepted from discharge pursuant to § 523 of the Code.[2] The Trustees were never parties to the Utah bankruptcy proceedings.

The Denneys eventually obtained a stipulated non-dischargeable judgment against the Debtor in the principal amount of $734,096.60. Their collection efforts proved fruitless, demonstrating that the Debtor was difficult to find. So, when they learned that the Debtor had been receiving approximately $300,000.00 in distributions from the Trust each year, the Denneys sought to obtain satisfaction of their judgment from the Debtor's interest in the Trust. They set the stage for this effort when, in October, 1995, they "registered" an authenticated copy of their judgment with the Bankruptcy Court for the Northern District of Texas "pursuant to 28 U.S.C. § 1738."[3] After the Debtor's bankruptcy

---

[1] 11 U.S.C. § 101 et seq. ("the Bankruptcy Code" or "the Code").

[2] 11 U.S.C. § 523.

[3] The Denneys' appellate brief states that the judgment was registered "in compliance with 28 U.S.C. § 1738," a statutory provision that specifies how legislative acts and judicial proceedings of states, territories, or possessions of the United States are to be authenticated, proved, or admitted into evidence for purposes of full faith and credit. Cf. Fed. R. Civ. P. 44. Neither the authenticity nor the registry of the Denneys' judgment

case in Utah was completed in early 1996, the Denneys filed suit against the Trustees in the bankruptcy court serving the Greater Dallas area where one or more of the Trustees are domiciled. Aware that, in Smith v. Moody (In re Moody),[4] we had affirmed a ruling of the Bankruptcy Court for the Southern District of Texas that imposed a 72-hour notice requirement on the trustee of a spendthrift trust of which the debtor in that proceeding was the beneficiary, the Denneys sought such an injunction against the Trustees in the bankruptcy court in Dallas.

Initially, the bankruptcy court granted the Trustees' motion to dismiss the Denneys' adversary proceeding in which they sought such a court-ordered advance notice from the Trustees.[5] On appeal, however, the district court reversed —— largely in reliance on its reading of our opinion in Moody and § 105 of the Code —— and remanded the matter to the bankruptcy court for a hearing on the Denneys' requested injunction.

On remand, the bankruptcy court obediently followed the legal conclusions of the district court and ordered the Trustees to furnish the Denneys and their counsel "at least 72 hours prior written and oral notice of any distribution to be made to or for the benefit of" the Debtor from income, principal, or other assets

is at issue in this appeal.

[4]  837 F.2d 719 (5th Cir. 1988).

[5]  The Denneys originally sought to garnish the Trustees as well but voluntarily withdrew this demand early in the proceedings.

4

of the Trust. This mandatory injunction specified that such notice must include the date and time of any intended distribution, the method, the name and address of the person or entities to receive the distribution, including account numbers in financial institutions, as well as the "source of instructions authorizing distributions if other than those contained in" the Trust, and, of course, the amount of the intended distribution. The bankruptcy court did not, however, require the Denneys to meet this court's usual prerequisites for obtaining a mandatory injunction.

The second time around it was the Trustees who appealed the bankruptcy court's decision to the district court. Inasmuch as, on remand, the bankruptcy court had simply applied the district court's interpretation of the law to the largely uncontested facts of the case, the district court affirmed the bankruptcy court on that subsequent appeal. Both the bankruptcy court and the district court continued to rely largely on Moody and § 105, plus the district court's perception that the bankruptcy court has "inherent" jurisdiction to enforce such a judgment. The Trustees timely filed a notice of appeal to this court.

## II.

## Analysis

### A. Standard of Review

Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any

5

stage of judicial proceedings.[6] The holding of a bankruptcy court (or a district court hearing an appeal from the bankruptcy court) that it has jurisdiction is a legal determination which we review de novo.[7] More generally, we review appeals from rulings and decisions of the bankruptcy court under the same standards employed by the district court when it hears an appeal from bankruptcy court.[8] Thus, we review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error.[9] Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed de novo.[10]

B. Bankruptcy Court Jurisdiction

In response to the Trustees' challenge to the jurisdiction of the bankruptcy court in Texas to aid in the collection of the judgment obtained by the Denneys in the bankruptcy proceedings in Utah, the Denneys have advanced no less than five theories for sustaining such jurisdiction. We consider those contentions

---

[6] 13 Charles A. Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3522, at 66-72 (2d ed. 1984).

[7] See Calhoun County v. United States, 132 F.3d 1100, 1103 (5th Cir. 1998).

[8] Texas Lottery Comm'n v. Tran (In re Tran), 151 F.3d 339, 342 (5th Cir. 1998).

[9] See Shurley v. Texas Commerce Bank (In re Shurley), 115 F.3d 333, 336 (5th Cir. 1997).

[10] Southmark Corp. v. Marley (In re Southmark Corp.), 62 F.3d 104, 106 (5th Cir. 1995), cert. denied 516 U.S. 1093 (1996); United States v. Blakeman, 997 F.2d 1084, 1089 (5th Cir. 1992), cert. denied 510 U.S. 1042 (1994).

seriatim.

### 1.  "Related to" jurisdiction

All federal courts are courts of limited jurisdiction which, for the most part, derives from statutory grants of the Congress. A bankruptcy court's jurisdiction is even more circumscribed and is wholly "grounded in and limited by statute."[11]  Specifically, 28 U.S.C. § 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings "arising under," "arising in a case under," or "related to" a case under Title 11 of the United States Code, i.e., proceedings "related to" bankruptcy. To determine whether such jurisdiction exists, "'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'"[12]  In each instance of challenged bankruptcy court jurisdiction, then, the result turns on how broad or how narrow "related to" should be construed under the circumstances.

A proceeding is "related to" a bankruptcy if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[13]  More specifically, "'[a]n action is related to bankruptcy if the outcome could alter the

---

[11]  Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).

[12]  Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 569 (5th Cir. 1995)(quoting Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987)).

[13]  Id.; see also Celotex, 514 U.S. at 308 n.6 (noting that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted this test, which originated in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984)).

debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and...in any way impacts upon the handling and administration of the bankruptcy estate.'"[14] This test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.

The injunction sought by the Denneys doubtlessly passes the first prong of that test: By assisting the Denneys in their efforts to intercept discretionary distributions from the Trust, the advance notice mandated by the injunction would deprive the Debtor of those funds and constrain his ability to spend them. The second prong, however, is problematical. Although the injunction would have an impact on the Debtor, it could not have any effect whatsoever on his estate in bankruptcy or its administration. First and foremost, such an estate no longer exists. The Utah bankruptcy proceedings were closed before the Denneys ever filed suit against the Trustees in the Bankruptcy Court in Texas. So, from the beginning of this litigation, there has been no bankruptcy estate to affect. "To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor."[15] The fact that the judgment was entered by the Bankruptcy Court in

_____

[14]   Walker 51 F.3d at 569 (citations omitted).

[15]   Wood, 825 F.2d at 94.

8

Utah rather than another court is irrelevant for purposes of "related to" jurisdiction.

"Related to" is a term of art in bankruptcy jurisdiction, where its meaning is not as broad as it is in ordinary parlance where it means "having some connection with." The distinction is that, for purposes of bankruptcy jurisdiction, there is a cause component in "related to." The proceeding must be capable of affecting the bankruptcy estate for it to be "related to" the bankruptcy. The only causal relationship here is the obverse: The bankruptcy proceedings in Utah affected the obligations owed by the Debtor to the Denneys by reducing them to judgment and making them non-dischargeable. Once that was done, the Denneys were simply judgment creditors of the former debtor in bankruptcy, unrelated to any extant bankruptcy proceeding or any bankruptcy court.[16]

We and other courts have refrained from extending "related to" jurisdiction to proceedings that would not affect the bankruptcy estate. For example, in Feld v. Zale Corp. (In re Zale Corp.),[17]

---

[16] Recently, this court held that 11 U.S.C. § 522(c) does not furnish a basis for a former wife to seek execution on a debtor's homestead, which has been claimed as exempt during his bankruptcy proceeding. Davis v. Davis (In Re Davis), No. 95-11112, 1999 WL 144113 (5th Cir. (Tex.) March 17, 1999). Unlike the present case, Davis questioned the facial applicability of the Bankruptcy Code to the claim being made, and the courts accordingly had jurisdiction to interpret the Code. Here, by contrast, the only question is subject matter jurisdiction over a controversy not guided by any Code provision.

[17] 62 F.3d 746 (5th Cir. 1995).

we reversed a settlement that would have enjoined third parties from filing various tort and contract actions. We stated that "[t]hose cases in which courts have upheld 'related to' jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate."[18] We noted in Zale that "'it is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction.'"[19] Although the litigation between the Debtor and the Denneys that resulted in their judgment was related to the Debtor's bankruptcy estate and bankruptcy proceeding in Utah, the dispute between the Denneys and the Trustees over collection of the Debtor's non-dischargeable judgment debt to the Denneys is not related to his bankruptcy estate. Again, by the time this dispute commenced, the Debtor had no such estate anywhere.

Another feature of this case that eschews "related to" bankruptcy court jurisdiction is the fact that any recovery that might result from the mandatorily enjoined advance notice of an imminent Trust distribution would not accrue to the estate. In

---

[18] Id. at 753 (footnote omitted); see also Walker, 51 F.3d at 569 (finding that a third-party contribution claim does not relate to the bankruptcy because the claim could not affect the administration of the estate or the debtor).

[19] 62 F.3d at 755 (quoting Elscint, Inc. v. First Wis. Fin. Corp. (In Re Xonics), 813 F.2d 127, 131 (7th Cir. 1987)).

10

<u>Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)</u>,[20] the Eleventh Circuit recognized the importance of the destination of the proceeds from a lawsuit, noting that "there is no suggestion that the proceeds, if recovered, would be turned over to the [bankruptcy] trustee....[W]e fail to see how recovery could conceivably have an effect on [the] debtor's estate....There is no reason for the bankruptcy court's jurisdiction to linger."[21]  The same holds true here, only more so.  The Bankruptcy Court for the Northern District of Texas has no "related to" jurisdiction to entertain the Denneys' injunction suit.

2.   <u>Inherent or Other Supplemental Jurisdiction</u>

Agreeing with the district court, the Denneys alternatively insist that the bankruptcy court has <u>inherent</u> jurisdiction to enforce the properly registered judgment.  Unflawed logical analysis dictates otherwise.  Inherent jurisdiction is an aspect of the kind of jurisdiction formerly known as "ancillary jurisdiction."[22]  Ancillary jurisdiction is now one facet of "supplemental jurisdiction,"[23] and we have held that bankruptcy courts cannot exercise supplemental jurisdiction.[24]  Even though in

---

[20]   910 F.2d 784 (11th Cir. 1990).

[21]   <u>Id.</u> at 789 (footnote omitted).

[22]   <u>See, e.g.</u>, <u>Peacock v. Thomas</u>, 516 U.S. 349 (1996).

[23]   <u>Royal Ins. Co. v. Quinn-L Capital Corp.</u>, 3 F.3d 877, 881 n. 2 (5th Cir. 1993).

[24]   <u>Walker</u>, 51 F.3d at 570-73.

11

*Walker* we dealt specifically with the type of supplemental jurisdiction previously labeled "pendent" jurisdiction, our reasoning in *Walker* applies equally to all supplemental jurisdiction. "Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and 'the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive "relate to" and "arising in" jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous.'"[25]

Perhaps even more to the point is the recognition that the particular "supplemental jurisdiction" action we review today is a new and independent action. As noted earlier, the Denneys instituted this case against the Trustees as a combined garnishment and injunction proceeding pairing (1) current collection efforts to seize interest of their judgment debtor in the hands of the third party Trustees with (2) enhanced ability to intercept future distributions from the Trustees to the Debtor as the beneficiary of the Trust. Even though the Denneys voluntarily non-suited the garnishment, it and the mandatory injunction for advance notice are analytically indistinguishable for purposes of classification as new and independent actions.

In this we are bound by our holding in Berry v. McLemore and

---

[25]   Id. at 573 (quoting Southtrust Bank v. Alpha Steel Co. (In re Alpha Steel Co.), 142 B.R. 465, 471 (M.D.Ala. 1992) (emphasis added)).

12

the reasoning behind it.[26]  If anything, <u>Berry</u> was a closer case:
It dealt with a money judgment previously rendered by the same
court in which the judgment creditor was seeking to garnish the
judgment debtor's former employer.  Moreover, the court in question
was a federal district court and thus a court of broader
jurisdiction than a bankruptcy court.  As in the instant case, the
judicial proceeding in which the money judgment was rendered had
been completed and was inactive, and the third party against whom
the garnishment was sought in the second proceeding had not been a
party to the first.  The <u>Berry</u> court recognized the general
principle that prior termination of a proceeding does not
ordinarily prevent the court from aiding in collection,[27] but
determined that the general rule gives way to the more specific
exception when the subsequent action is new and independent from
the first.[28]  Relying on our pronouncement in <u>Butler v. Polk</u>[29] that
garnishment actions against those who were not parties to the
original action "are generally construed as independent suits, at

---

[26]  795 F.2d 452 (5th Cir. 1986).

[27]  <u>Id.</u> at 455; <u>see</u> <u>Riggs v. Johnson County</u>, 73 U.S. (6 Wall.)
166, 187 (1868)("[T]he jurisdiction of a court is not exhausted by
the rendition of the judgment, but continues until that judgment
shall be satisfied....Process subsequent to judgment is as
essential to jurisdiction as process antecedent to judgment, else
the judicial power would be incomplete and entirely inadequate to
the purposes for which it was conferred by the Constitution.").

[28]  <u>Berry</u>, 795 F.2d at 455.

[29]  592 F.2d 1293 (5th Cir. 1979).

least in relation to the primary action"[30] in which the judgment was rendered, we held in Berry that the district court lacked jurisdiction to entertain the garnishment.[31]

The Butler/Berry analysis is clearly applicable to the action brought by the Denneys in the Bankruptcy Court in Texas and stymies their effort to support jurisdiction of that court under the rules of supplemental jurisdiction. As we stated in Berry, "[w]e can find no case where a court held that it had ancillary jurisdiction to consider claims in a new and independent action merely because the second action sought to satisfy or give additional meaning to an earlier judgment."[32] The bankruptcy court has no inherent jurisdiction to hear this case.

### 3. Retained Jurisdiction

The Denneys' reliance on Querner v. Querner (In re Querner)[33] to support their contention that the bankruptcy court has "retained" jurisdiction is misplaced. Querner observed that,

---

[30] See id. at 1295.

[31] 795 F.2d at 455.

[32] Id. (emphasis added). Although the question whether the Utah Bankruptcy Court –– or the district courts for the District of Utah or the Northern District of Texas for that matter –– would have jurisdiction to entertain the Denneys' action is not before us, we sense that the holdings in Butler and Berry would circumscribe the jurisdiction of those courts as well.

[33] 7 F.3d 1199 (5th Cir. 1993).

14

because a court's jurisdiction over related proceedings depends on the nexus between the underlying bankruptcy case and the related proceeding, the dismissal or closing of a bankruptcy case will, ordinarily, result in the dismissal of related proceedings.[34] Notwithstanding this general rule, however, Querner noted that "[t]he decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court," and that the court's decision should not be reversed absent clear abuse of that discretion.[35]

Implicit in the Querner analysis — and missed or ignored by the Denneys — is an assumption that, before a court can exercise its discretion to "retain" jurisdiction over a "related proceeding," the court must have had jurisdiction over that proceeding in the first place. The Denneys did not file their suit in Texas until after the bankruptcy case in Utah had been closed. From a purely temporal standpoint, there was no proceeding over which bankruptcy court jurisdiction could be "retained." Moreover, nothing in the Utah case suggests that the court contemplated or ordered that it should retain jurisdiction. In any event, if it had tried to do so, its order could not have extended beyond the

---

[34]   Id. at 1201.

[35]   Id. at 1202. Similar to a federal district court's decision regarding the retention of jurisdiction over pendent state claims after federal claims have been dismissed, a bankruptcy court must consider the factors of economy, convenience, fairness, and comity in deciding whether to dismiss or retain jurisdiction over related proceedings. Id.

15

scope of "related-to" jurisdiction.   Retained jurisdiction is unavailing here.

### 4.   Core Bankruptcy Jurisdiction

In apparent disregard of the ruling in Walker that the court need only assess whether the proceeding "relates to" the bankruptcy,[36] the Denneys insist that their action is within the core jurisdiction of the bankruptcy court. Under this proposition, however, essentially any lawsuit that, if successful, could adjust the debtor-creditor relationship in any way would be a core bankruptcy proceeding.   The Denneys' reliance on 28 U.S.C. § 157(b)(2)(O) is unavailing.[37] We have never held that § 157 confers jurisdiction separate and apart from that existing under § 1334.[38] Thus, the case must be "arising under" Title 11 or "arising in" a case involving Title 11 to be a core proceeding.  Albeit true that, under Wood, a proceeding is core if it "invokes a substantive right provided by title 11" or "could arise only in the context of a

---

[36]   Walker, 51 F.3d at 568-69.

[37]   28 U.S.C. § 157(b)(2)(O) provides:
   Core proceedings include, but are not limited to...other proceedings affecting...the adjustment of the debtor-creditor... relationship, except personal injury tort or wrongful death claims.

[38]   28 U.S.C. § 1334; see Walker, 51 F.3d at 569 ("Section 157 does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334; rather, § 157 allows district courts to assign cases to the bankruptcy courts.").

bankruptcy case,"[39] we locate nothing in Title 11 that can be read to provide a statutory right to obtain the kind of third party notice sought by the Denneys.[40] This is confirmed by the recognition that collection of money judgments emanating from a bankruptcy case — particularly non-dischargeable money judgments — can be resolved outside the bankruptcy case. The instant action does not fall within a core bankruptcy provision.[41]

5.    Diversity or Federal Question Jurisdiction

In a final jurisdiction argument that approaches frivolousness, the Denneys contend that their action falls within both the diversity of citizenship and federal question jurisdictions of the bankruptcy court. They appear to argue, with flawed logic, that because the district court could entertain their action under diversity jurisdiction in a second lawsuit and then refer the case to the bankruptcy court, requiring them to file initially in the district court would be a waste of judicial resources. The Denneys also argue, without citation, that the collection of a federal judgment is a question of federal law. Separate and apart from the insurmountable hurdle that these

---

[39]    Wood, 825 F.2d at 97.

[40]    Cf. Perkins Coie v. Sadkin (In re Sadkin), 36 F.3d 473, 478 (5th Cir. 1994)(explaining that 11 U.S.C. § 105 does not authorize the bankruptcy courts to create substantive rights).

[41]    See Edwards v. Sieger (In re Sieger), 200 B.R. 636, 639 (Bankr. N.D. Ind. 1996)("Section 1334(b) does not confer the jurisdiction needed to enforce a non-dischargeable money judgment entered against a bankruptcy debtor.").

17

arguments would encounter in the Butler/Berry doctrine, it is clear that § 157 does not allow referral of a diversity or federal question jurisdiction case to the bankruptcy court when the case does not otherwise meet the requirement for jurisdiction of that court.[42] This effort to conjure up jurisdiction on theories of diversity of citizenship or federal question is meritless.

B.   Merits[43]

Alternatively, the bankruptcy court's mandatory injunction, granted as instructed on remand from the district court, cannot stand even if we assume, arguendo, that the bankruptcy court had jurisdiction to entertain the injunction action in the first place. Essentially disregarding the long-established precepts of Anglo-American trust law in general and the subtopics of trustee discretion and spendthrift trusts in particular — from which Texas does not deviate — the bankruptcy court, like the district court before it, relied almost entirely on our opinion in Moody[44] as authority to override the absolute discretion vested in the Trustees by the Settlors of the Trust by ordering, via a mandatory

_____

[42]   See 28 U.S.C. § 157(a).

[43]   As we hold that the bankruptcy court and district court lacked jurisdiction, the analysis we conduct on the merits is persuasive authority at best.   We conduct this analysis nonetheless, in the hope that it will be sufficiently persuasive to help such courts avoid the misunderstanding that we believe our precedent (or a creative reading thereof) caused here.

[44]   See Smith v. Moody (In re Moody), 837 F.2d 719 (5th Cir. 1988).

18

injunction, that the Trustees furnish the aforesaid 72-hour advance notice. In addition to ignoring centuries of trust law, this ruling failed to recognize significant differences between the instant action and the Moody litigation that so clearly distinguish the two cases: (1) The bankruptcy proceeding in Moody commenced under Chapter 13 and was converted to a Chapter 11 reorganization; the Bass bankruptcy was a Chapter 7 liquidation, (2) the Moody bankruptcy proceeding was on-going; the Bass bankruptcy proceeding was completed and quiescent before the instant litigation was commenced, (3) the advance notice action in Moody took place in the active bankruptcy proceeding of the debtor; the instant action is separate and independent from the closed or at least dormant bankruptcy proceeding in which the Denneys' judgment was rendered, (4) the basis of the action in Moody was the post-petition misappropriation by the debtor of trust distributions he received within 180 days after the filing of the bankruptcy petition; the basis of the Denney judgment was a pre-petition loan guarantee, (5) the trustee bank in Moody was a party to the debtor's bankruptcy proceeding; the Trustees here were not parties to the Utah bankruptcy litigation that produced the Denneys' judgments, (6) the claim of the trustee in bankruptcy in Moody was not sought in a Butler/Berry "new and independent action" but was an integral part of the efforts of the bankruptcy trustee to marshal the assets of the bankruptcy estate, i.e., to recoup the misappropriated post-petition trust distributions; the judgment on which collection is

19

sought by the Denneys represents a pre-petition debt that had no direct connection with the bankruptcy proceedings, (7) the spendthrift trust distributions sought by the bankruptcy trustee in <u>Moody</u> would inure directly to the estate; the distributions sought in the instant case go directly to judgment creditors without even passing through an estate or the hands of a trustee in bankruptcy, and (8) —— most significantly from the standpoint of trust law —— the future trust distributions that the complaining bankruptcy trustee in <u>Moody</u> was seeking were not <u>discretionary</u> spendthrift trust distributions but rather <u>non</u>-discretionary, <u>mandatory</u> quarterly income distributions which under the provisions of the trust agreement the bank trustee was required to make to its beneficiary who just happened to be the debtor in bankruptcy; in stark contrast, the disbursements that the Denneys seek to intercept are entirely <u>discretionary</u> future trust distributions to their judgment debtor who just happens to be a <u>former</u> bankruptcy debtor.

Not only do the myriad differences in the two cases palpably distinguish the instant case from <u>Moody</u>, the discrete facts and circumstances of <u>Moody</u> dictate that its holding and reasoning be limited to those unique and difficult facts for which its highly imaginative solution was crafted. Most obviously, <u>Moody</u> cannot be read as precedent for the Denneys' proposition that the bankruptcy court in Texas can enforce a non-dischargeable money judgment against the Debtor —— particularly a judgment obtained in a former

Chapter 7 proceeding in a different bankruptcy court —— against the non-party trustee of a discretionary, spendthrift trust, the beneficiary of which is the judgment debtor.

To illustrate the significance of these distinctions, a hypothetical situation is helpful. In addition to assuming arguendo that the Texas bankruptcy court had jurisdiction, assume further that (1) the Bass Chapter 7 bankruptcy petition was filed in the Northern District of Texas rather than in Utah, (2) those proceedings were still ongoing when the Denneys instituted the instant action, and (3) the Trustees were parties to that ongoing Chapter 7 bankruptcy case in Texas. This hypothetical illustration crystallizes the tension between, on the one hand, the equitable powers of the bankruptcy court, under § 105 and other provisions, to enforce its rulings, orders, and judgments, and, on the other hand, the venerable tenets of Anglo-American trust law in general and Texas trust law in particular that proscribe judicial tinkering with provisions of a valid spendthrift trust that, inter alia, vest the trustees with unfettered discretion whether and when to make distributions to the beneficiary of the trust. We cannot help but note that the Denneys' appellate brief is devoid of any comprehensive discussion of substantive trust law. As the Trustees' appellate brief treats this subject extensively, we borrow from it in the following analysis.

As we acknowledged in Shurley, the State of Texas has long recognized the validity of discretionary trusts and spendthrift

trusts.[45]  It is here undisputed that the Trust is a spendthrift trust and that the Trustees are vested with maximum discretion.  By voluntarily and irrevocably committing substantial assets to the Trust for the benefit of their grandson, the Settlors exercised their prerogative to shield trust principal and future trust income from the vulnerability of youth and the potential weaknesses of the human condition of their then-young grandson — as well as from the avarice (or even fraud) of his putative future creditors — to the maximum extent permitted by law.[46]  The embodiment of this protection is found in the Trust's anti-alienation and discretionary distribution provisions.

When, as here, a Texas trust indenture contains express prohibitions against voluntary and involuntary alienation, the trust is a "spendthrift" trust for all purposes.[47]  As such, "no part of [a] spendthrift trust estate can be taken on execution or garnishment by creditors of the beneficiary."[48]

Additionally, "[w]here by the terms of the trust a beneficiary is entitled only to so much of the income or principal as the

---

[45]  115 F.3d at 338.

[46]  See Wilson v. United States (In re Wilson), 140 B.R. 400, 405-06 (Bankr. N.D. Tex. 1992)(applying Texas law).

[47]  Texas Commerce Bank Nat'l Ass'n v. United States, 908 F. Supp. 453, 457 (S.D. Tex. 1995)(applying Texas law).

[48]  Bank of Dallas v. Republic Nat'l Bank of Dallas, 540 S.W.2d 499, 501 (Tex. Civ. App.-Waco 1976, writ ref'd n.r.e.).

trustee in his uncontrolled discretion shall see fit to give him,"[49] the trust is denominated a "discretionary trust" by Texas law. It follows that when "no standard or guide is affixed to the trustee's distribution power,"[50] a beneficiary has no authority to force a trustee to distribute trust assets.[51] A universal canon of Anglo-American trust law proclaims that when the trustee's powers of distribution are wholly discretionary, the beneficiary has no ownership interest in the trust or its assets until the trustee exercises discretion by electing to make a distribution to the beneficiary.[52] Texas law is to the same effect: "Where discretionary trusts are involved, the beneficiary has no right to trust income [or assets] until the trustee elects to irrevocably and unconditionally place it in the beneficiary's control."[53] It follows that when such discretionary powers are granted to trustees of a spendthrift trust, assets of the trust are immune from claims of the beneficiary's creditors, who can stand in his shoes but no higher:

---

[49] Wilson, 140 B.R. at 404 (quoting 2 Austin W. Scott & William F. Fratcher, The Law of Trusts § 155, at 152 (4th ed. 1988)).

[50] Id.

[51] Id.; Kolpack v. Torres, 829 S.W.2d 913, 915 (Tex. App.-Corpus Christi 1992, writ denied).

[52] George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 228, at 524-25 (2d ed. 1979).

[53] Wilson, 140 B.R. at 404 (citing Commissioner v. Porter, 148 F.2d 566 (5th Cir. 1945)).

23

> Discretionary trusts are similar in effect to a spendthrift trust in that where a trustee has been invested with a discretionary power to give an interest in a trust fund to a named beneficiary, the beneficiary cannot alienate the funds nor can creditors reach the fund until the trustee's discretion has been exercised.[54]

A universally recognized corollary is that courts can neither prevent or force the exercise of discretion by the trustee nor specify a particular exercise or otherwise interfere with or impinge on such discretion when it is expressly vested, without condition or limitation, under the terms of the trust instrument.[55] Again, Texas is in accord: Texas courts "are limited in their powers over the trustee of a discretionary trust,"[56] prohibited by law from interfering with the discretion of the trustee absent a clear showing of fraud or other egregious conduct.[57]     No such

---

[54]   Id. at 404; see also Texas Commerce Bank Nat'l Ass'n, 908 F. Supp. at 457-58 (S.D. Tex. 1995)(prohibiting the IRS from levying on present or future discretionary distributions under spendthrift trust).

[55]   3 Austin W. Scott & William F. Fratcher, The Law of Trusts § 187, at 14-15 (4th ed. 1988).

[56]   Wilson, 140 B.R. at 405.

[57]   Id. Although our opinion in Moody does not contain such an expression, the clear inference is that, were it not for the evasive misconduct of the debtor — and possibly even the complicity or cooperation of the bank (coincidentally the "Moody" National Bank) with the miscreant debtor — in connection with post-petition trust distributions to the debtor, or to his administrative assistant, or directly into his account in a Canadian bank, the bankruptcy court may well not have imposed the notice provision on the co-defendant trustee bank, even in connection with non-discretionary quarterly distributions of trust income.

fraudulent or egregious misconduct by the Trustees is charged in the instant case, so court interference with the unconditional discretion vested in the Trustees is prohibited by applicable trust law.

Moreover, as rules of trust interpretation mandate a construction of the trust instrument that will best effectuate the purposes of its settlor, any distribution of trust assets by a trustee that would frustrate the purposes and intentions of the settlor could constitute a breach of the trust.[58]  Thus, were the Trustees to be faced with the dilemma whether (1) to exercise their discretion and make a distribution of income to the Debtor after furnishing 72 hours advance notice to the Denneys or (2) to refrain from making any distributions at all, the Trustees could well be facing a breach of trust claim irrespective of which "horn" of that dilemma they might choose.  This well illustrates how the imposition of such a notice provision substantially impinges on the otherwise unfettered discretion of the Trustees and goes to the heart of spendthrift provisions that proscribe involuntary alienation by the creditors of the beneficiary.

We recently confirmed that the United States bankruptcy court is subject to the same strictures as are the courts of Texas when it comes to honoring the provisions of a discretionary spendthrift trust.  In Shurley, we partially reversed the bankruptcy court to

---

[58]  Hughes v. Jackson, 81 S.W.2d 656, 659 (Tex. Comm'n App. 1935, opinion adopted).

25

the extent it had declared portions of a spendthrift trust funded by the parents of the debtor to be property of his Chapter 7 estate.[59] In so doing, we announced that we were following "the longstanding rule of Texas law that a settlor should be allowed to create a spendthrift trust that shields trust assets from the beneficiary's creditors."[60] We emphasized that bankruptcy does not free federal courts to ignore the clear public policy of a state that makes sacrosanct the intentions of the settlor of a spendthrift trust:

> The bankruptcy court's ruling ignores the wishes of...the primary settlors of the trust, and the state's policy of respecting their expectations. "Spendthrift trusts are not sustained out of consideration for the beneficiary. Their justification is found in the right of the donor to control his bounty and secure its application according to his pleasure."[61]

Even more closely on point was the recognition by the bankruptcy court in <u>Wilson</u> that it could not compel the trustee of a discretionary spendthrift trust to exercise discretionary distribution powers for the benefit of the IRS (and, obviously, to the detriment of the beneficiary of the trust).[62] In implicit recognition that our decision in <u>Moody</u> is inapt when an individual

---

[59] 115 F.3d at 338.

[60] <u>Id.</u>

[61] <u>Id.</u> (quoting <u>Hines v. Sands</u>, 312 S.W.2d 275, 279 (Tex. Civ. App.-Fort Worth 1958, no writ)).

[62] <u>Wilson</u>, 140 B.R. at 406-07.

26

creditor seeks to impose conditions or restrictions on the discretion of the trustee of a spendthrift trust, the <u>Wilson</u> court noted that "[t]he parties have not cited, nor has the court located, any authority requiring the Trustee to notify [a creditor] when it makes a distribution."[63]

In addition to placing the Trustees in the untenable position of either refraining from making Trust distributions altogether or doing so after giving notice to the Denneys and thereby risking charges of breach of trust, the judicial engrafting of the advance notice requirement mandated by the bankruptcy court's injunction here undeniably defeats a principal feature of every spendthrift trust, i.e., the dual proscription against both voluntary and involuntary alienation, the latter of which is, as a practical matter, rendered nugatory by such a notice requirement. A settlor who intends to protect the property that he places in trust from the potential profligacy of the beneficiary first prohibits <u>voluntary</u> alienation so that the beneficiary himself cannot <u>anticipate</u> future distributions by encumbering his interest in the trust or future trust distributions. Prohibiting voluntary alienation is supposed to chill a potential creditor who cannot look to the assets of the trust as collateral for a loan to the beneficiary. But, without the complementary prohibition against <u>involuntary</u> alienation, the adventurous or inadvertent creditor ——

---

[63] <u>Id</u>. at 407 n.6.

or the fraudulently induced creditor, such as the Denneys —— could be converted from unsecured to secured creditors by the simple expediency of seizing the interests of their debtor in his trust. To be completely effective, therefore, a spendthrift trust must prohibit both voluntary and involuntary alienation.

No sophistication is required to discern that superimposing on the trustee of a discretionary spendthrift trust a requirement to furnish advance notice to the trust beneficiary's creditor would eliminate (or at least greatly reduce) the efficacy of the involuntary alienation facet of the spendthrift trust's prohibitions. For, given the knowledge that advance notice would be forthcoming in time to allow the interception of trust distributions, an aggressive creditor could more comfortably afford to risk making an otherwise unsecured loan to the beneficiary.

We are convinced beyond peradventure that, absent fraudulent or egregious acts by the trustee of a wholly discretionary Texas spendthrift trust, federal courts are shackled by the same constraints as are the courts of Texas: They can neither prohibit nor command the exercise of such discretion, or otherwise interfere — directly or indirectly — with the unfettered discretion of such trustees. We therefore hold in the alternative that the Bankruptcy Court for the Northern District of Texas, in dutifully following the instructions of the district court on remand, erred as a matter of law when it enjoined the Trustees to furnish to the Denneys and their counsel 72 hours advance notice of any discretionary

28

distributions to be made by the Trustees to or for the benefit of the Debtor as the Trust's beneficiary.

## III.

## Conclusion

For the reasons explained above, the judgment of the bankruptcy court must be reversed and its mandatory injunction vacated. Procedurally, the bankruptcy court in Texas lacks jurisdiction to enjoin the Trustees, who had not been parties to the Utah Chapter 7 bankruptcy proceeding of the Debtor, to furnish to the Denneys advance notice of impending trust distributions. Substantively, if we had jurisdiction to consider the merits of the injunction, we would conclude that the court violated firmly established trust law by granting an injunction that indisputably impinges on and interferes with the Trustees' non-fraudulent free exercise of their discretion. Either way, the rulings of the bankruptcy court could not stand.

JUDGMENT REVERSED and INJUNCTION VACATED.