**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-50865
_____

IN THE MATTER OF: J.R. CANION, JR.,

                                                    Debtor


RANDALL & BLAKE, INC.

                                                    Appellant,

versus

CHARLES R. EVANS; MARY E. EVANS; CINDY RICH;
TIMOTHY N. RICH; KATHY HICKS; KENNETH G.
HICKS; EVANS EQUIPMENT, INC.; OTIS FREEMAN;
and OSCAR MACKEY,

                                                    Appellees.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

November 19, 1999

Before JONES and WIENER, Circuit Judges, and WALTER, District

Judge.[*]

WIENER, Circuit Judge:

At the core of this appeal is the issue of federal bankruptcy

jurisdiction under 28 U.S.C. §1334(b).  Plaintiff-Appellant Randall

and Blake, Inc. ("R&B") is a judgment creditor of J.R. Canion, Jr.

("Canion").  After Canion Filed for bankruptcy, R&B brought suit in

federal district court against several of Canion's friends,

---

[*]District Judge of the Western District of Louisiana, sitting
by designation.

relatives, business associates, and employees (collectively, "defendants"),[1] alleging that they had conspired to interfere with R&B's efforts to collect on its judgment. The district court referred the case to bankruptcy court pursuant to 28 U.S.C. §157. At the close of R&B's case-in-chief, the bankruptcy judge ruled in favor of the defendants, finding R&B had failed to prove that they were anything more than unwitting participants in Canion's scheme to prevent R&B from collecting on its judgment.

After trial, R&B argued first to the bankruptcy court, then to the district court, and now to us, that the bankruptcy court lacked jurisdiction to hear the case and, accordingly, R&B should be allowed to try its case again but in the district court. We find, as did the other two courts, that at the time the jurisdiction of the bankruptcy court was invoked, it was conceivable that R&B's suit against the defendants could have an effect on the bankruptcy estate, and thus conclude that there was "related to" bankruptcy jurisdiction under 28 U.S.C. §1334(b). On the merits, R&B had the burden of proving that the defendants intended to impede R&B's collection efforts. We find no clear error in the bankruptcy court's determination that R&B failed to meet this burden. We therefore affirm the judgment of the district court.

---

[1]This group includes: Charles and Mary Evans (long-time friends of Canion); Evans Equipment, Inc. (business owned by Charles and Mary Evans); Kathy and Kenneth Hicks (daughter and son-in-law of Canion); Cindy and Timothy Rich (daughter and son-in-law of Canion); Otis Freeman (employee of ACCO II); and Oscar Mackey (Shareholder of ACCO II).

I.

FACTS & PROCEEDINGS

R&B holds a non-discharged judgment against Canion stemming from an unrelated breach-of-contract action that R&B successfully brought against Canion in his role as principal of Austin Construction Company ("ACCO I"), a paving and excavation business. R&B has repeatedly but unsuccessfully attempted to collect on its judgment. According to R&B, the defendants, together with Canion and his ex-wife, conspired to secret Canion's assets and thereby thwart R&B's collection efforts. Allegedly, as part of this effort, some of the defendants incorporated ACCO Equipment Rental, Inc. ("ACCO II") to which Canion transferred assets from ACCO I and through which Canion continued to operate his business.

Canion filed for protection under Chapter 7 of the Bankruptcy Code in January, 1992. R&B filed a proof of claim in Canion's bankruptcy for $302,977.42, the amount of its judgment, plus interest. Three months later, R&B instituted the instant proceeding in federal district court against the defendants and Canion's ex-wife, apparently without making Canion a party.[2] R&B's compliant includes a detailed account of fraud and deception by Canion, his ex-wife, and the defendants.[3] The following causes of

---

[2] Jurisdiction was based on the diversity of the parties. 28 U.S.C. §1332.

[3] The factual allegations in R&B's complaint are that, to avoid collection of the judgment, Canion, his ex-wife, and the various defendants engaged in certain bad acts, including: (1) engaging in

action were pleaded:

        (1) tortious interference with judgments;
        (2) conspiracy to interfere with judgments;
        (3) actual and constructive fraud;
        (4) conspiracy to defraud;
        (5) fraudulent transfers; and
        (6) alter ego liability.

The first four causes of action sound in tort; the last two allege violations of the Texas Uniform Fraudulent Transfer Act[4] and abuse of the corporate form. R&B's complaint seeks the following monetary and injunctive relief: (1) A judgment holding the defendants personally liable to R&B for the amount of Canion's judgment[5]; (2) an order compelling the defendants to identify assets, proceeds of assets, and documents relating to assets belonging to Canion; (3) a decree setting aside the fraudulent transfers made by Canion to the defendants; and (4) dissolution of ACCO II.

While the suit by R&B against the defendants was pending in district court, R&B filed a complaint in Canion's bankruptcy

---

fraudulent transfers of real and personal property; (2) forming ACCO II, a sham corporation, for the purpose of hiding assets; (3) falsifying financial statements; (4) hiding property from the federal marshal who attempted to execute a Writ of Seizure; (5) lying about the ownership and whereabouts of personal property; (6) setting up a bogus security interest in assets to prevent their seizure and sale; and (7) Canion and his wife entering into a sham divorce to create multiple bankruptcy exemptions.

[4]See Tex. Bus. & Comm. Code §24.001 et seq.

[5]R&B did not seek to impose personal liability on Oscar Mackey; rather, it sought a judgment canceling the stock Mackey held in ACCO II.

-4-

proceeding alleging that because of Canion's fraudulent pre-bankruptcy activities, his debts should not be discharged. The court found that Canion had purposefully clouded title to property on the eve of bankruptcy and therefore denied Canion a discharge with respect to all creditors under alternative subsections of 11 U.S.C. §727.[6]

Thereafter, in the district court proceeding between the defendants and R&B, the defendants moved to (1) join Canion's Chapter 7 bankruptcy Trustee as a plaintiff, arguing that she was a necessary party, and (2) transfer the case to the bankruptcy court that was adjudicating Canion's bankruptcy. While the defendants' motion was pending, the Trustee filed her own motion seeking to intervene as plaintiff in R&B's district court suit against the defendants, advancing that all of the causes of action asserted by R&B against the defendants were property of Canion's bankruptcy estate. Accordingly, the Trustee argued, she was "the only proper party Plaintiff in all these causes of action."

In response, R&B asserted that its "claims include claims other than for fraudulent conveyances that would be non-core

---

[6]11 U.S.C. §727(a) provides that individual Chapter 7 debtors, like Canion, shall be granted a discharge for all pre-petition debts <u>unless</u> they engage in any one of an enumerated list of bad acts. The bankruptcy court found that "every action taken by the debtor [Canion] was a direct reaction to action that [R&B] had taken." It therefore denied Canion a discharge alternatively under 11 U.S.C. §727(a)(3) (exception to discharge for failure to make full financial disclosure), (4) (exception to discharge for "bankruptcy crimes"), and (5) (exception to discharge for failure adequately to explain a loss or deficiency of assets).

proceeding[s], but related to the bankruptcy court proceeding," and that it had "no objection to the transfer of this entire case to the bankruptcy court."  The district court allowed the Trustee to intervene and transferred the proceeding to the bankruptcy court for trial.

On April 18, 1994, the first day of trial, the bankruptcy court struck ACCO II's answers because it failed to comply with bankruptcy court orders and sanctions.  Consequently, the allegations that ACCO II was Canion's alter ego were deemed admitted, the company was liquidated, and its assets (worth approximately $200,000) were brought into Canion's bankruptcy estate.

After five days of testimony, R&B concluded its case in chief, and, sua sponte, the court entered a take nothing judgment in favor of the defendants, pursuant to Rule 52 of the Federal Rules of Civil Procedure.[7]  Specifically, the court found that the defendants "were being used as . . . tools unwittingly and unknowingly by [Canion] and [that] they were duped like everybody else."

After the trial, the bankruptcy court inquired into the effect of our recent decision in In re Educators Group Health Trust.[8]  In

---

[7]The court did not rule on the plaintiffs' (R&B's and the Trustee's) claims against Geneva Canion.  These matters later settled and are not before us on appeal.

[8]25 F.3d 1281, 1284 (5th Cir 1994).

response to this inquiry, R&B for the first time argued that the bankruptcy court lacked jurisdiction over all causes of action that it had brought against the defendants. R&B urged that these "claims are not core or 'related to' (noncore) proceedings because they are personal claims against nondebtors [seeking] relief for the direct injuries to R&B," and, therefore, the district court's reference of those claims to the bankruptcy court was improper.[9] R&B requested in the alternative that the bankruptcy court reverse its substantive finding that R&B failed to meet its burden of proof.

The court denied R&B's motion as being wholly without merit. R&B then filed a motion in the district court, making the same jurisdictional and substantive arguments. On the magistrate judge's recommendation, the district court denied R&B's motion, holding:

---

[9]In Educators, we were faced with competing claims of ownership of causes of action against third party nondebtors by the bankruptcy trustee on one hand and individual creditors on the other. We held that the nature of the injury for which relief is sought determines who owns a given claim: If the complaint alleges injury to the debtor that, in turn, injures all creditors indirectly, then the claim belongs to the estate and is properly asserted by the trustee; by contrast, if the complaint alleges direct (as opposed to derivative) injury to a creditor, the claim belongs to the creditor. See 25 F.3d at 1284.

In its post-trial motion requesting that the bankruptcy court find that it was without jurisdiction, R&B asserted that "[I]n light of [Educators], [R&B's] claims against nondebtors belong to [R&B] so they are not within the jurisdiction of this Bankruptcy Court." As R&B had, from the very beginning, asserted that it owned all the claims against the defendants, it is difficult to see how Educators led R&B to the revelation that bankruptcy jurisdiction was lacking.

The fraudulent conveyance clauses of action are "core" claims, 28 U.S.C. §157(b)(2)(H), and obviously belong to the Trustee. [R&B] contends its causes of action against the Evans for (i) tortious interference with judgment, (ii) conspiracy to interfere with judgments, (iii) fraud, (iv) conspiracy to defraud, and (v) receipt of fraudulent conveyances are outside the subject matter of the bankruptcy court. Despite [R&B]'s protestations to the contrary, each of these causes of action, even assuming they belong solely to R&B, "relate to" the Canion bankruptcy. . . .

Further proceedings in the bankruptcy court followed,[10] after which R&B again appealed the adverse rulings of the bankruptcy court, raising the same issues. The district court rejected R&B's arguments a second time and this appeal followed.

## II.

## ANALYSIS

### A.   Standard of Review

Federal courts must be assured of their subject matter jurisdiction at all times.[11] Both the bankruptcy and district courts' finding that they had subject matter jurisdiction is a

---

[10]Subsequent to R&B's first appeal to the district court, the bankruptcy court issued an order regarding ownership of the causes of action first brought by R&B: In response to the Trustee's motion to abandon as burdensome property (i.e., the causes of action over which both R&B and the Trustee had claimed ownership) the bankruptcy court ruled that (1) as the allegations that ACCO II was Canion's alter ego had been deemed admitted and the company liquidated and (2) as the fraudulent conveyance suit had settled, the question of the Trustee's right to abandon these two causes of action was moot. The court further held that R&B owned the remaining causes of action so they were not subject to abandonment by the Trustee.

[11]See Bass v. Denney (In re Bass), 171 F.3d 1016, 1021 (5th Cir. 1999).

-8-

legal determination that we review <u>de novo</u>.[12]  With regard to the substantive elements of the appeal, bankruptcy court rulings and decisions are reviewed by this court under the same standards employed by the district court hearing an appeal from bankruptcy court, i.e., conclusions of law are reviewed <u>de novo</u> and findings of fact are reviewed for clear error.[13]  Mixed questions of fact and law are reviewed <u>de novo</u>.[14]

B.    <u>Bankruptcy Court Jurisdiction</u>

Federal courts are courts of limited jurisdiction, and bankruptcy courts are no exception.  Their jurisdiction is "wholly 'grounded in and limited by statute.'"[15]  28 U.S.C. §1334 lists the following four types of bankruptcy matters over which district courts have jurisdiction:

(1) "cases under title 11";
(2) "proceedings arising under title 11";
(3) proceedings "arising in" a case under title 11; and
(4) proceedings "related to" a case under title 11.

---

[12]<u>Id.</u> (citing <u>Calhoun County v. United States</u>, 132 F.3d 1100, 1103 (5th Cir. 1998)).

[13]<u>Id.</u> (citing <u>Shurley v. Texas Commerce bank (In re Shurley)</u>, 115 F.2d 333, 336 (5th Cir. 1997)).

[14]<u>Id.</u> (citing <u>Southmark Corp. v. Marley (In re Southmark Corp.</u>), 62 F.2d 104, 106 (5th Cir. 1995), cert. denied 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996); <u>United States v. Blakeman</u>, 997 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 654 (1994)).

[15]<u>See</u> <u>Bass v. Denney (In re Bass</u>), 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)).

The first category refers to the bankruptcy petition itself.[16] The second, third, and fourth categories "operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."[17] 28 U.S.C. §157 empowers district courts to refer such proceedings to the bankruptcy court; thus, if R&B's claims against the defendants are at least "related to" Canion's bankruptcy, the district court's referral of the proceeding to the bankruptcy court was proper.[18]

"Related to" is a term of art. As we recently explained in In re Bass: "A proceeding is 'related to' a bankruptcy 'if the outcome

_____

[16]See Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987).

[17]Bass v. Denney, 171 F.3d at 1022 (quoting Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 569 (5th Cir. 1995) (quoting In re Wood, 825 F.2d at 93))).

[18]28 U.S.C. §157 grants bankruptcy judges authority to "hear and determine" (1) core proceedings and (2) non-core proceedings if all parties consent. See §157(b)(1), (c)(2). In non-core "related to" proceedings, however, if all of the parties do not consent to the referral, the district court may refer the case to the bankruptcy court for hearings only. In such cases, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ." §157(c)(1).
  Here, all of the parties consented to the reference; thus if there was "related to" jurisdiction, the bankruptcy court had the power both to hear the case and enter orders and judgments even if the case is a non-core proceeding. See §157(c)(2); FDIC v. Majestic Energy Corp. (In re Majestic Energy), 835 F.2d 87, 90 (5th Cir. 1998) ("In this case, the parties consented to the matter being determined by the bankruptcy judge. Consequently, even if the matter is a non-core proceeding, a determination by the bankruptcy judge was proper as long as the matter was at least related to the bankruptcy case.").

-10-

of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[19]  R&B admits that this proceeding shares common facts with core proceedings in Canion's bankruptcy, but correctly points out that common facts alone are insufficient to confer "related to" jurisdiction.[20]

The defendants argue that, as R&B consented to the jurisdiction of the bankruptcy court at the time the case was referred there by the district court, it cannot now claim that jurisdiction is lacking.  It is well settled, however, that the subject matter jurisdiction of a federal court can be challenged at any stage of the litigation (including for the first time on appeal), even by the party who first invoked it.[21]  Furthermore, parties cannot confer subject matter jurisdiction on federal courts.[22]  Consequently, R&B's consent to the district court's

---

[19]Bass v. Denney (In re Bass), 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting In re Walker, 51 F.3d 562, 569)).  This test was adopted from Third Circuit's decision in Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984, 994 (3d Cir. 1984).  See In re Wood, 825 F.2d at 93.

[20]See, e.g., Feld v. Zale Corp., 62 F.3d 746, 753 (5th Cir. 1995) ("Shared facts between the third-party action and the debtor-creditor conflict do not in and of themselves suffice to make a third-party action 'related to' the bankruptcy.") (citing cases)).

[21]See American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct 534, 95 L.Ed. 702 (1951); Veldhoen v. U.S. Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §3522 at 67-69 (2d. ed. 1984).

[22]See Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

-11-

referral of this case to the bankruptcy court did not establish bankruptcy "related to" jurisdiction.

R&B's argument contesting jurisdiction is that if it successfully prosecutes its claims against the defendants, its judgment against Canion will not be extinguished; instead, the judgment will persist in favor of the defendants who will stand in R&B's shoes as a judgment creditor of Canion. This is so, according to R&B, because if it successfully collects Canion's debt from the defendants, they will be legally subrogated to R&B's rights against Canion. It follows, R&B insists, that whatever might be the outcome of R&B's suit against the defendants, Canion will still owe the same sum, the only possible difference being to whom the sum is owed.

There is a flaw in R&B's argument regarding the application of legal subrogation to the instant facts: Although Texas courts liberally apply the doctrine of legal subrogation[23] in instances when one person involuntarily pays the debt for which another

---

[23]In <u>Argonaut Ins. Co. v. Allstate Ins. Co.</u>, 869 S.W.2d 537, 541 (Tex. App. 1993) the court explained the process of legal subrogation as follows:

> Subrogation is the substitution of one person in the place of another, whether as creditor or as the possessor of some lawful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim. By subrogation, a court of equity, for the purpose of doing exact justice between parties in a given transaction, places one of them, to whom a legal right does not belong, in the position of a party to whom the right does belong. <u>McBroom Bannett Plumbing, Inc. v. Villa France, Inc.</u>, 515 S.W.2d 32, 36 (Tex. App. 1974).

person is primarily liable,[24] legal subrogation —— like all equitable remedies —— is sometimes denied to litigants who come to court with unclean hands.[25] To prevail against the defendants, R&B would have to prove that they engaged in intentionally tortious or fraudulent conduct —— exactly the type of conduct that has led Texas courts to deny a remedy lying in equity, including legal subrogation.[26]

Assuming that R&B should successfully collect from the defendants the judgment it holds against Canion, and assuming that the defendants' fraudulent conduct would preclude legal subrogation, the total amounts due on claims against Canion's bankruptcy estate would be decreased. This decrease would inure to the benefit all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to

---

[24]Id. at 542.

[25]See Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678, 683 (Tex. App. 1998) ("Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute."); Schenk v. Halliday Real Estate, Inc., 803 S.W.2d 361, 366 (Tex. App. 1990) ("It is well settled that a party seeking equity cannot come into a court with unclean hands.").

[26]See Rotge v. Dunlap, 91 S.W.2d 905, 908 (Tex. App. 1936) ("The findings show fraud on [the part of the party seeking legal subrogation]. He does not come into court with clean hands, and is therefore not in a position to invoke the equitable principles upon which legal subrogation rests."); Christian v. Manning, 59 S.W.2d 234, 237 (Tex. App. 1933) (applying to legal subrogation the maxim that "one who seeks equity must come into court with clean hands"); Bell v. Franklin, 230 S.W.2d 181, 185 (Tex. App. 1921) (same).

R&B.[27]

Courts in other circuits that have faced this question have held that a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer "related to" jurisdiction.[28] We note that at the time that the district court referred this proceeding to the bankruptcy court,[29] the sequence of events that

_____

[27]If, at the time of R&B's suit against Canion, his bankruptcy estate had already been administered by the trustee — i.e., if all property of the estate were collected, liquidated, and the proceeds distributed to creditors — then presumably R&B's potential damage recovery against the defendants would have been limited to the amount of the outstanding judgment (that part of the judgment not paid through bankruptcy), and no effect on the estate would have been possible. In this case, however, at the time of the district court's reference, the estate had not been fully administered. In fact, after the case was referred to the bankruptcy court, the trustee recovered and distributed over $200,000 to the creditors of Canion's estate, including distributions to R&B that would not have been made if its judgment against Canion — and therefore its claim against his estate — had already been satisfied by the defendants.

[28]See Owens Illinois, Inc. v. Rapid American Corp (In re Celotex Corp.), 124 F.3d 619, 626 (4th Cir. 1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); Kaonohi Ohana, Ltd. v. Sutherland (In re Sutherland), 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over third-party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); National Union finre Ins. Co. v. Titan Energy, Inc., 837 F.2d 325, 329 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust), 87 B.R. 447 (Bankr. E.D. Mich. 1988).

[29]Federal subject matter jurisdiction is tested when the jurisdiction of the federal court is invoked. See Freeport-McMoRAN, Inc. v. K N Energy, Inc., 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); St. Paul Mercury Indemnity Co. v. Red Cab Co.,

would reduce the claims against Canion's bankruptcy estate was not certain to occur; however, the law is well established in this Circuit, as in others, that, when testing "related to" jurisdiction, an effect is not required to a certainty. Rather, jurisdiction will attach on a finding of any <u>conceivable</u> effect.[30]

---

303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Generally, subsequent changes will not divest jurisdiction. Id. This case is unusual in that the jurisdiction of two separate federal courts were invoked, and the basis for subject matter jurisdiction in each court was different — the jurisdiction of the district court was based on diversity under §1332, and the jurisdiction of the bankruptcy court was based on bankruptcy "related to" jurisdiction under §§1334(b), 157. It was appropriate to test the district court's jurisdiction when the claim was brought, and the bankruptcy court's jurisdiction at the time of the reference. See Continental National Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1346 n.8 (11th Cir. 1999) ("The presence or absence of jurisdiction must be evaluated based on the state of affairs existing at the time the adversary complaint was filed . . . not at some later time when, for example, it was ultimately determined here that the Estate had no interest in the [matter]."); Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788-89 & n.20; Cf. Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 579-80 (3d Cir. 1989).

[30]See In re Wood, 825 F.2d at 94 ("Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no conceivable effect.") (emphasis in original); Copelin v. Spirco, Inc., 1999 WL 445643 (3d. Cir. July 1, 1999) ("[T]he key word is 'conceivable.' Certainty, or even likelihood [of effect on the estate being administered in bankruptcy] is not a requirement." (internal quotation marks and citation omitted; alteration in original)); In re Titan Energy, 837 F.2d at 325, 330 (8th Cir. 1988) ("[E]ven a proceeding which portends a mere contingent to tangential effect on a debtor's estate meets the broad jurisdictional test [for "related to" jurisdiction]."); 1 Lawrence P. King, COLLIER ON BANKRUPTCY §3.01[4][c] at 3-26 (15th ed. 1998) ("'[A]utomatic' liability of the estate is not the sine qua non for related to jurisdiction; all that is necessary is that there could 'conceivably' be some effect upon the estate as a consequence of the litigation in question.").

We find that at the time the district court referred the case to the bankruptcy court (which is the time its jurisdiction is tested), the outcome of this proceeding could have affected Canion's bankruptcy estate. We conclude, therefore, that the test for "related to" jurisdiction has been met.

C.   Factual sufficiency

R&B urges that if we find (as we have) that the bankruptcy court had jurisdiction to try this case, we should nevertheless reverse on the grounds that it clearly erred in its ruling on the merits. We decline to do so.

To prevail on its causes of action against the defendants, R&B had to prove intentional misconduct on their part.[31] The bankruptcy court, after hearing the live testimony of the witnesses and observing their demeanor, determined that the defendants were unknowing participants in Canion's plot to avoid collection on the judgment. The court further concluded that R&B could have, but did not, seize assets belonging to Canion, choosing instead to pursue

_____

[31]R&B repeatedly cites to us the Texas Supreme Court case of Castleberry v. Banscum, 721 S.W.2d 270 (Tex. 1986) as standing for the proposition that constructive fraud, which does not require intent, was sufficient grounds for a court to disregard the corporate form thereby extending liability to the shareholders —— in that case some of the defendants. Castleberry was statutorily overruled. In 1989, in response to Castleberry the Texas legislature amended the Texas Business Corporation Act. Now, a shareholder cannot be held liable for corporate obligations unless actual fraud is shown. See Tex. Bus. Corp. Act art 2.21(B); Puri v. Mansukhani, 973 S.W.2d 701, 713 (Tex. App. 1998).

collection from the defendants because they constituted a "deep pocket."

The bankruptcy court based these conclusions on its determination of the credibility of the witnesses — specifically, the trial court found credible the testimony of the defendants denying that they had acted with the intent to impede R&B's collection efforts. "The burden of showing that the findings of a trial court are clearly erroneous is heavier if credibility of witnesses is a factor in the [] court's determination."[32] Only rarely will we depart from the trial court's assessment of the credibility of the witnesses.[33] Our review of the record satisfies us that the findings of the trial judge in this respect are not clearly erroneous.

III.

CONCLUSION

R&B's challenge to the bankruptcy court's jurisdiction assumes that eventual success against the defendants would automatically lead them to be legally subrogated to R&B's judgment against Canion. As we have demonstrated, however, even though this outcome would be possible, it is not inevitable. Another possibility is

---

[32]Theriot v. Parish of Jefferson, 1999 WL 624026 (5th Cir. Aug. 17, 1999); Fed. R. Civ. Proc. 52(a) ("due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.").

[33]Id.; Travelers Indem. Co. v. Calvert Fire Ins. Co., 798 F2d 826, 836 (5th Cir. 1986).

that R&B's judgment against Canion would be satisfied by the defendants and R&B's claim against Canion's bankruptcy estate would evaporate, thereby reducing the liabilities of the estate and producing an effect sufficient to confer "related to" jurisdiction. On the merits, the bankruptcy court's determination that R&B failed to establish the fraudulent intent necessary to hold the defendants (or any of them) liable under any of the asserted causes of action was not clearly erroneous. For the forgoing reasons the judgment of the bankruptcy court is, in all respects, AFFIRMED.

JONES, Circuit Judge, concurring:

I concur in Judge Wiener's careful and comprehensive opinion. I write separately to point out a possible procedural flaw that crept into this case and, while not material to its resolution, applies to district courts' responsibility for bankruptcy cases. RBI, as part of its attack on the adverse bankruptcy court decision against the nondebtor defendants, moved the district court to withdraw the reference of the adversary proceeding. 28 U.S.C. § 157(d). The district court referred this motion to a magistrate judge who wrote a detailed memorandum recommending denial. The district court then issued its own opinion, stating that it had reviewed the motion *de novo*, and denied RBI's request. Referral of this motion to the magistrate judge not only cost time and duplicated judicial resources, but it is also questionable procedurally.

This court has held that magistrate judges may not rule on appeals from decisions of bankruptcy courts. <u>Minerex Erdoel, Inc. V. Sena, Inc</u>., 838 F.2d 781 (5th Cir.) *cert. denied*, 488 U.S. 817 (1988). *See also* <u>Allstate Ins. V. Foreman</u>, 906 F.2d 123, 125 (5th Cir. 1990). Those decisions are predicated on 11 U.S.C. § 158, which governs bankruptcy appeals, whereas this case was presented as a motion to withdraw reference from the bankruptcy

court to the district court and was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b). It is not at all clear, however, that § 636(b) authorizes a "reference" to the magistrate judge of what is essentially a motion challenging the propriety of the "reference" of a case to a bankruptcy judge. 28 U.S.C. § 157(a). Magistrate judges and bankruptcy judges enjoy equal status to each other, and both are subject to the district court's control. The effect of reference to the magistrate judge was to seek a proposed ruling by one adjunct of the district court concerning an action of another adjunct of the district court. Prudence, at least, would suggest that the district court should decide on its own whether a continued reference to its adjunct court is appropriate.

Without detracting from the conscientious work of the courts here, I lay it on the hearts of our lower courts to be careful of their prescribed boundaries.