IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2008

Charles R. Fulbruge III

Clerk

No. 07-50099

In The Matter Of: GEORGE GERVIN; JOYCE GERVIN,

                                                            Debtors,

------------------------------------------------

CADLES GRASSY MEADOWS II, L.L.C.,

                                                            Appellant–Cross-Appellee,

v.

JOYCE GERVIN,

                                                            Appellee–Cross-Appellant.

CONSOLIDATED with
Case No. 07-50101

In The Matter Of: GEORGE GERVIN; JOYCE GERVIN,

                                                            Debtors,

------------------------------------------------

CADLES GRASSY MEADOWS II, L.L.C.,

                                                            Appellee–Cross-Appellant,

v.

GEORGE GERVIN, Intervenor,

                                                            Appellant–Cross-Appellee.

No. 07-50099
No. 07-50101

Appeals from the United States District court for the
Western District of Texas
USDC No. 5:06-CV-439
USDC No. 5:05-CV-1100

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Cadles of Grassy Meadows II, L.L.C. (Cadles) and George Gervin (G. Gervin) appeal from orders of the district court affirming and reversing orders of the bankruptcy court. Joyce Gervin (J. Gervin), G. Gervin, and Cadles cross-appeal. The district court affirmed the bankruptcy court's determination that Cadles held a valid lien on G. Gervin's interest in a partnership, but not on J. Gervin's interest. The district court reversed the bankruptcy court's contempt finding against Cadles. We affirm the district court.

I

In 1983, G. Gervin and others formed the 401 Group partnership (401 Group). The 401 Group's sole asset is an apartment complex in Tacoma, Washington. At the 401 Group's formation, G. Gervin was a 50% general partner. In 1984, the Gervins divorced. The resulting decree awarded J. Gervin a one-half interest in G. Gervin's property, which included the "Wright Park Apartments Limited Partnership, located in the State of Washington." The Gervins remarried in 1985. J. Gervin filed for divorce again in 1989, but the Gervins did not actually divorce. In 1992, G. Gervin assigned a half of his interest in the 401 Group to J. Gervin in consideration of a reconciliation.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1986, the TransAmerican Capital Corporation (TransAmerican) filed a lawsuit against G. Gervin (but not J. Gervin) in Texas state court to recover the remaining debt of approximately $2 million on a loan that G. Gervin had guaranteed two years earlier. In 1989, the Texas court entered an Agreed Judgment in favor of TransAmerican (TCAP Judgment). This judgment was eventually assigned to Cadles. Before the judgment was assigned to Cadles, a predecessor-in-interest to Cadles registered the TCAP Judgment as a foreign judgment in Washington state by initiating an action in Washington state court. The Washington court issued a charging order in 1996, which ordered G. Gervin to pay the judgment creditor any distributions from the 401 Group to which G. Gervin had a right until the debt was repaid. This judgment created a lien against G. Gervin.

In 1998, G. Gervin and J. Gervin jointly filed for chapter 7 bankruptcy in the bankruptcy court. This filing stayed all activity regarding the TCAP Judgment in the Washington court under 11 U.S.C. § 362. The Gervin's bankruptcy schedules listed the 401 Group as community property. The U.S. Trustee filed a Notice of Intention to Abandon the 401 Group (meaning that the trustee wished to abandon pursuing this asset) after filing a No Asset Report (no property in the estate is available for distribution to creditor). G. Gervin and J. Gervin received a discharge injunction from the bankruptcy court, which released the Gervins from some of their debts but did not release them from valid and enforceable liens, such as the TCAP judgment.

Also in 1998, the Gervins filed their first adversary proceeding to determine the validity, extent, and priority of the TCAP Judgment and other liens. In December 1998, the bankruptcy court issued an Agreed Order that the TCAP judgment was a valid lien against G. Gervin and that TCAP is "entitled to payment from" the 401 Group. This is in line with the bankruptcy court's

3

previous decision to exempt enforceable liens from the bankruptcy court's discharge order.

On September 15, 2004, Cadles filed a motion in the Washington court seeking the sale of G. Gervin's 50% partnership interest in the 401 Group to pay off G. Gervin's outstanding debt from the TCAP Judgment. On September 21, 2004, J. Gervin's counsel notified Cadles that G. Gervin did not own the 50% interest in the 401 Group, but one half of that as J. Gervin asserted an independent 25% interest in the 401 Group.

On September 24, 2004, J. Gervin filed a second adversary action in the bankruptcy court to protect her 25% interest in the 401 Group alleging that Cadles's actions in the Washington court violated the bankruptcy court's discharge injunction. On October 1, 2004, the bankruptcy court entered a temporary restraining order and, on October 18, 2004, the bankruptcy court issued a preliminary injunction enjoining Cadles from seizing, attaching, selling, or executing J. Gervin's 25% interest in the 401 Group. The bankruptcy court did not require a bond in either of these orders. The bankruptcy court held that the Washington court's charging order on the TCAP Judgment applied only to G. Gervin's interest in the 401 Group and did not affect J. Gervin's interest. Also on October 18, 2004, G. Gervin intervened in the second adversary proceeding.

On October 22, 2004, the Washington court heard Cadles's Motion for an Order Directing Sale. The Washington court concluded that Cadles had standing to pursue the judgment and directed the sale of G. Gervin's interest but not J. Gervin's interest. The Washington court did not determine the validity of G. Gervin's assignment to J. Gervin, but it did establish that the TCAP Judgment was valid in Washington and that Cadles owned it.

On November 18, 2004, G. Gervin filed a motion for a temporary restraining order in the second adversary proceeding seeking to protect his own

interest in the 401 group. The bankruptcy court granted the temporary restraining order without requiring a bond. The bankruptcy court later granted G. Gervin's motion for a preliminary injunction without requiring a bond. The bankruptcy court subsequently denied Cadles's motions for reconsideration, new trial, and/or relief from the preliminary injunction. Cadles appealed these rulings to the district court.

Cadles filed for summary judgment in the second adversary proceeding. The bankruptcy court found J. Gervin owned a separate 25% interest in the 401 Group that was not subject to Cadles's lien; however, Cadles could enforce its lien against G. Gervin's 25% interest in the 401 Group. Additionally, the bankruptcy court held Cadles in contempt for violating J. Gervin's discharge injunction by filing an action in the Washington court. The bankruptcy court awarded J. Gervin $25,000 for emotional distress, $18,190 for attorney's fees incurred to that point, and another $15,000 for prospective attorney's fees. G. Gervin and Cadles appealed the adverse rulings to the district court.

The district court entered three orders affirming the bankruptcy court in most respects. With regard to Cadles's appeals, the district court affirmed the bankruptcy court's (1) validation of J. Gervin's 25% interest in the 401 Group partnership and (2) failure to require a bond. However, the district court reversed the bankruptcy court's finding of contempt against Cadles and vacated any associated damages. Cadles also challenged the bankruptcy court's jurisdiction for the first time on appeal to the district court. The district court rejected Cadles's jurisdictional challenges. With respect to G. Gervin's appeal, the district court affirmed the bankruptcy court in all respects. Specifically, the district court found that the bankruptcy court (1) appropriately permitted Cadles to raise its affirmative defense of estoppel at "a pragmatically sufficient time," (2) properly deferred to the Washington court's judgments, and (3) correctly

rejected G. Gervin's assertions of dormancy with respect to the TCAP Judgment. All parties timely appealed from the district court's three appellate rulings.

II

An appeal of a district court's appellate order in a bankruptcy matter invokes slightly different standards since it is the second level of appellate review. First, the bankruptcy and district courts' finding of subject matter jurisdiction is a legal determination that the we review de novo.[1] Second, "[w]ith regard to the substantive elements of the appeal, bankruptcy court rulings and decisions are reviewed by this court under the same standards employed by the district court hearing an appeal from bankruptcy court, i.e., conclusions of law are reviewed de novo and findings of fact are reviewed for clear error."[2] Third, mixed questions of law and fact are reviewed de novo.[3] However, the district court "must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found."[4] Further, reviewing courts should give due regard to the opportunity of the bankruptcy court to evaluate the credibility of the witnesses.[5]

A

Cadles challenges the district court's rulings that (1) the bankruptcy court had subject matter jurisdiction, (2) J. Gervin owned a 25% interest in the 401 Group so that Cadles could only execute the TCAP Judgment on G. Gervin's 25%

---

[1] Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 584 (5th Cir. 1999) (citation omitted).

[2] Id. (citation omitted).

[3] Id. (citation omitted).

[4] Multi-Mart Branch Office, First State Bank v. Appliance Buyers Credit Corp. (In re Bufkin Bros., Inc.), 757 F.2d 1573, 1577-78 (5th Cir. 1985) (citation omitted).

[5] Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.), 2 F.3d 128, 130-31 (5th Cir. 1993) (citing FED. R. BANKR. P. 8013).

interest in the partnership, and (3) the Gervins were not required to post a bond as a condition for injunctive relief.

1

Cadles argues that the district court erred in finding that the bankruptcy court had subject matter jurisdiction over the Gervins' second adversary proceeding, which alleged that Cadles violated J. Gervin's discharge injunction. "A bankruptcy court's jurisdiction is especially circumscribed and wholly 'grounded in, and limited by, statute.'"[6] 28 U.S.C. § 1334(b) provides that, except in limited circumstances, district courts and their adjunct bankruptcy courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

A proceeding to enforce a discharge injunction is a core proceeding under section 157(b)(2)(O) of title 28.[7] Bankruptcy courts have jurisdiction over such cases and may even reopen a closed case to ensure that the purpose of its discharge order is not undermined.[8]

As the district court concluded, it was under the original discharge injunction jurisdiction that the bankruptcy court heard whether a violation of J. Gervin's discharge injunction had occurred. Whether Cadles violated the 1998 discharge order necessarily invokes the question of the validity of G. Gervin's assignment to J. Gervin.

Cadles argues that resolution of this question could have been made in the Washington court; however, this does not mean that the bankruptcy court did not have jurisdiction to examine this claim. The bankruptcy court properly

---

[6] Bissonnet Invs. L.L.C. v. Quinlan (In re Bissonnet Invs. L.L.C.), 320 F.3d 520, 525 (5th Cir. 2003) (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995)).

[7] COLLIER ON BANKRUPTCY §524.02[2][c] (15th ed. 2007).

[8] Id.

determined the validity of the assignment since Cadles would violate J. Gervin's discharge injunction if J. Gervin rightfully owned a 25% interest in the 401 Group.[9]

Cadles also challenges the district court's conclusion that the bankruptcy court had jurisdiction over G. Gervin's claims in the second adversary action. Jurisdiction can be predicated on matters related to bankruptcy. This court considers a matter "related to" bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[10] The district court found that "[e]ven if unlikely, it is certainly conceivable that determining the validity of Cadles's lien could affect J. Gervin's estate." G. Gervin's claims in the second adversary proceeding relate to the bankruptcy because a finding that Cadles's lien is not valid would provide additional grounds that Cadles's attempt to collect the debt from J. Gervin was improper. In that sense, the district court correctly determined that G. Gervin's claims relate to J. Gervin's core claims. Accordingly, the bankruptcy court properly had subject matter jurisdiction.

2

Cadles argues that the district court erred in affirming the bankruptcy court's determination that J. Gervin holds a 25% interest in the 401 Group. Cadles raises numerous arguments against the validity of the assignment from G. Gervin to J. Gervin: (1) the 401 Group lists G. Gervin as a 50% general partner; (2) the 401 Group documents do not mention J. Gervin; (3) J. Gervin never held herself out as a partner; (4) the bankruptcy court filings do not

---

[9] See Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth L.L.P. (In re Pavelich), 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999) (bankruptcy court has jurisdiction to enforce the discharges regardless of whether there is a state court judgment).

[10] Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (citation omitted).

support the assignment, (5) the partnership agreement forbade the assignment, (6) the district court's ruling is not supported by Washington law, (7) the Texas divorce court decree does not support the assignment, and (8) payments from the partnership do not support the assignment.

The 401 Group was formed in Washington and is governed by Washington law.[11]  Under Washington law, partnerships are assignable in whole or in part, and such assignments do not necessarily "entitle the assignee to become or to exercise any rights or powers of partner," but do "entitle the assignee to share" in the assignor's profits and losses.[12]

Cadles asserts that the evidence indicates that (1) the Gervins reached some sort of "economic" understanding in the course of the Gervins' marital difficulties, (2) the divorce decree mentions a specified apartment complex rather than the 401 Group, (3) J. Gervin only received two payments from the 401 Group partnership and there is no evidence that the payments related to the alleged assignment, (4) no public documents support the assignment, (5) the Gervins' asset reports filed in the bankruptcy court list the 401 Group asset as community property, and (6) the detailed testimony of Russ Francisco supports Cadles's position.  Russ Francisco serves as managing agent of Wright Park L.L.C., which has been the managing general partner of the 401 Group since December 2003.  Cadles's attack on the Texas divorce decree for addressing (as between the Gervins) the "Wright Park Apartments Limited Partnership, located in the State of Washington" rather than the 401 Group, taxes credulity.

The 401 Group partnership agreement provides that no partner may sell, assign, pledge, or mortgage his interest in the partnership without the consent of the other partners.  The district court construed this provision to apply only

---

[11] WASH. REV. CODE ANN. § 25.05.030.

[12] WASH. REV. CODE ANN. § 25.10.400(1)(a)-(c).

to full assignments of partnership interests. Cadles argues that this interpretation is not supported by Washington law and J. Gervin was never issued a "Certificate of Partnership." However, assignments do not "entitle the assignee to become or exercise any rights or powers of partner," but can simply "entitle the assignee to share" in the assignor's profits and losses.[13] Moreover, although a partnership agreement may provide that a partner's interest in a limited partnership "may be evidenced" by a certificate of partnership, none is required.[14] The district court's determination that J. Gervin owns a 25% interest in the 401 Group is supported by law and fact.

3

Cadles argues that the district erred in finding that the bankruptcy court did not abuse its discretion in refusing to require the posting of a bond as a condition to granting injunctive relief. Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, under Federal Rule of Bankruptcy Procedure 7065, the bankruptcy court was not compelled to require the Gervins to post a bond.[15] Cadles does not argue that the bankruptcy court

---

[13] Id.

[14] See WASH. REV. CODE ANN. § 25.10.400(2) ("The partnership agreement may provide that a partner's interest in a limited partnership may be evidenced by a certificate of partnership interest issued by the limited partnership and may also provide for the assignment or transfer of any partnership interest represented by such a certificate and make other provisions with respect to such certificates.").

[15] FED. R. BANKR. P. 7065 ("Rule 65 F.R.Civ.P. applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c).").

should not have applied the bankruptcy procedural rules. Cadles also failed to appeal the actual injunctions. Accordingly, the district court did not err.

B

J. Gervin brings a series of challenges to the district court's reversal of the bankruptcy court's contempt finding against Cadles and derivative award of costs, attorney's fees, and damages. J. Gervin argues that deference should be given to the bankruptcy court's findings of fact. These issues, however, present mixed questions of law and fact and are reviewed de novo.[16]

Pursuant to the Bankruptcy Code's civil contempt power, bankruptcy courts may award damages.[17] "[I]n a civil contempt proceeding, the party seeking an order of contempt need only establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."[18] "To support a contempt finding, the court's order must set forth in specific detail an unequivocal command."[19] Although the bankruptcy court's 1998 discharge injunction applies to G. Gervin's interest in the 401 Group, the discharge injunction does not define G. Gervin's interest. This caused extensive litigation in 2004, and thus negates a finding of contempt against Cadles.

We also reject J. Gervin's argument that because she prevailed in her declaratory judgment action, her attorney's fees and costs should be upheld

---

[16] Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 584 (5th Cir. 1999) (citation omitted).

[17] See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

[18] Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, 177 F.3d 380, 382 (5th Cir. 1999) (citation omitted).

[19] N. Shore Labs. Corp. v. Cohen, 721 F.2d 514, 521 (5th Cir. 1983), overruled on other grounds by Qualitex Co. v. Jacobson Prods Co., 514 U.S. 159, 174 (1995) (citation and internal quotation marks omitted).

independent of the contempt reversal. In a federal question action, attorney's fees and costs are appropriately awarded where a federal statute provides for recovery of attorney's fees.[20] The bankruptcy court awarded attorney's fees under 11 U.S.C. § 524. Section 524 in conjunction with 11 U.S.C. § 362(k) supplemented the contempt power, and provided a statutory basis for an award of attorney's fees.[21] Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." However, the record does not support a finding that Cadles's actions were willful. Cadles's violation was not willful given the fact that the bankruptcy court's 1998 discharge injunction was not clear on the scope of G. Gervin's stake in the 401 Group. Further, given that J. Gervin filed the second adversary proceeding after Cadles sought a charging order in the Washington state court, we affirm the district court's legal conclusion that Cadles was only pursuing what it believed to be G. Gervin's 50% interest in the 401 Group. Accordingly, we affirm the district court's reversal of the bankruptcy court's contempt finding and associated awards.

C

G. Gervin appeals the district court's rulings that the bankruptcy court properly (1) granted summary judgment on an affirmative defense where such defense was not pled, (2) concluded that the Washington court judgment did not estop the bankruptcy court from determining whether the discharge injunction

---

[20] See Kirchberg v. Feenstra, 708 F.2d 991, 994-96 (5th Cir. 1983) (awarding attorney's fees to prevailing civil rights plaintiff who was nominal defendant in accordance with the statute authorizing fee awards in civil rights cases—42 U.S.C. § 1988).

[21] See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1104 (2d Cir. 1990) (interpreting subsection h; however amendments in 2005 changed subsection h to k without altering the willful standard in any important way for this case).

prevented Cadles from collecting on the TCAP judgment, and (3) determined that the TCAP judgment was not dormant.

1

G. Gervin argues that the district court erred in affirming the bankruptcy court's grant of summary judgment to Cadles on the unpled affirmative defense of estoppel contending that he did not have sufficient time to prepare a response to Cadles's affirmative defense and was consequentially prejudiced.

Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth affirmatively certain defenses, including estoppel.[22] "[A] party's failure to plead an affirmative defense . . . generally results in the waiver of that defense and its exclusion from the case."[23] However, we have held that if a defense is raised in such a manner that it "does not result in unfair surprise," then a "technical failure to comply precisely with Rule 8(c) is not fatal."[24]

The district court correctly concluded that Cadles's assertion of estoppel did not violate Rule 8(c) because Cadles raised the defense at a pragmatically sufficient time to prevent unfair surprise to G. Gervin.[25] Cadles's summary judgment motion was filed four months before the bankruptcy court issued a decision. Moreover, the Washington court judgment was an issue of contention between the parties. G. Gervin was well aware of the proceedings in Washington and participated in them. G. Gervin was not "unfairly surprised."

---

[22] Fed. R. Civ. P. 8(c) ("[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense").

[23] Harris v. Sec'y, U.S. Dept. of Veterans Affairs, 126 F.3d 339, 343 (D.C. Cir. 1997) (citation and internal quotation marks omitted).

[24] Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983) (per curiam) (citing Jones v. Miles, 656 F.2d 103, 107 n.7 (5th Cir. 1981)).

[25] See Lafreniere Park Found. v. Broussard, 221 F.3d 804, 808 (5th Cir. 2000) (party raising the affirmative defense of res judicata in a motion for summary judgment did not unfairly surprise the opposition since the issue was raised at a pragmatically sufficient time).

G. Gervin argues that the district court erred by affirming the bankruptcy court's determination that the Washington court sale order (ordering sale of G. Gervin's interest in the 401 Group) did not preclude the bankruptcy court from ruling on whether Cadles was the owner of the TCAP Judgment and whether the discharge injunction prevented Cadles from collecting on the TCAP Judgment. For issue preclusion to apply: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action."[26]

G. Gervin argues that the Washington court did not decide the issue of whether Cadles owned the TCAP Judgment. That argument is unconvincing and contradicted by the record. After a full evidentiary hearing, the Washington court found that the TCAP Judgment constituted a binding judgment in Washington and that Cadles had standing to pursue it. Moreover, the bankruptcy court concluded that the agreed order of December 1, 1998, noted that G. Gervin agreed that the TCAP Judgment lien survived. Accordingly, the district court correctly affirmed the bankruptcy court's determination that Cadles held the TCAP Judgment.

G. Gervin also argues that the district court improperly affirmed the bankruptcy court's deferral to the Washington court's determinations on the validity and ownership of the TCAP Judgment since only the bankruptcy court could have the final decision on this matter. However, 11. U.S.C. § 524 does not prevent creditors from postdischarge enforcement of a valid lien that existed at the time of entry of the discharge injunction, if the lien was not avoided under

---

[26] Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 932 (5th Cir. 1999).

the Bankruptcy Code.[27] The bankruptcy court specifically exempted the TCAP Judgment from the discharge injunction. Moreover, the 1998 agreed order specifies that the TCAP Judgment lien survived the discharge injunction. Accordingly, Cadles could not violate the discharge injunction with regard to G. Gervin's 401 Group interest by seeking collection of a valid lien in the Washington court.

3

G. Gervin asserts that the bankruptcy court improperly granted summary judgment to Cadles because the TCAP judgment was dormant and never revived. Construing the evidence most favorable to G. Gervin, the bankruptcy court did not err in granting summary judgment to Cadles and the district court did not err in affirming. There are no issues of material fact regarding the dormancy of the TCAP Judgment that would preclude summary judgment.

Under Texas law, "[i]f a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived."[28] "A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant."[29] G. Gervin argues that an attempt to revive the TCAP Judgment in Texas did not occur until 2000, when Value Recovery Group—a predecessor-in-interest to Cadles—filed a writ of scire facias in Texas state court, which is more than ten years after the date of the TCAP judgment. However, the 1998 agreed order in the bankruptcy court's first adversary proceeding revived the TCAP judgment. An adversary proceeding is an "action

---

[27] COLLIER ON BANKRUPTCY § 524.02[2][d] (15th ed. 2007).

[28] TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a).

[29] TEX. CIV. PRAC. & REM. CODE ANN. § 31.006.

of debt," which revives a judgment if it is based on the original judgment.[30]  We reject the argument that the creditor must bring the action to be an "action of debt."  The fact that the debtor (G. Gervin) brought the action is of no practical importance in this case.  Further, even if we accepted that the creditor must bring the action, that is vitiated here since the debtor (G. Gervin) entered into an agreed order in the first adversary action.  Accordingly, we affirm the district court.

*       *       *

For the foregoing reasons, the judgments of the district court are AFFIRMED.

---

[30] See Churchill v. Russey, 692 S.W.2d 596, 597-98 (Tex. App.—Fort Worth 1985, no writ) (new suit based on the original judgment and brought against the judgment debtor qualifies as an action of debt and consequentially is sufficient to revive the judgment under Texas law).