**EDGE PETROLEUM OPERATING COMPANY, INC., Plaintiff,**

v.

**DUKE ENERGY TRADING & MARKETING, L.L.C., Defendant.**

**No. CIV.A. H–02–1906.**

United States District Court, S.D. Texas, Houston Division.

Oct. 7, 2002.

Order denying reconsideration May 9, 2003.

Barry Allan Brown, Attorney at Law, Houston, TX, for Plaintiff.

John Carlton Wynne, Andrews & Kurth LLP, Houston, TX, for Defendant.

## ORDER

RAINEY, District Judge.

Pending before the Court is Plaintiff Edge Petroleum Operating Company, Inc.'s ("Edge") Motion for Remand (Dkt.# 4). Having considered the parties' arguments, responses, and applicable law, the Court is of the opinion that the motion should be DENIED.

## BACKGROUND

Edge is a producer of natural gas. Through an agent, Edge sold natural gas to one or more entities (the "Debtors") who then resold the gas to Duke Energy Trading & Marketing, L.L.C. ("Duke"). Duke made payments to the Debtors that it believed were payments for gas it had purchased. However, Duke believed that it overpaid the Debtors for some shipments. Therefore, Duke withheld money from later payments as part of a self-help strategy to recoup the alleged overpayments.

The Debtors then began to file for bankruptcy. Edge alleges that the Debtors never paid it for gas produced and delivered to the Debtors in May and June 2001. Edge further alleges that it has a lien on the proceeds of any sale of the gas by Debtors to a subsequent purchaser, such as Duke. The parties dispute who currently has possession of such proceeds. Edge brought suit against Duke in Texas state court to recover any portion of these proceeds that may be in Duke's possession. Duke claims that it has already given all of the proceeds to the Debtors and has filed claims in the bankruptcy proceedings to recover the rest of its alleged overpayments.

On March 4, 2002, Aurion Technologies, one of the entities involved in the gas deliveries and payments, filed a voluntary petition for bankruptcy. Then, on May 17, 2002, Duke removed the state court action between Edge and itself on the grounds that it was related to the Debtors' bankruptcy actions. On May 23, 2002, Edge moved for remand of this action to state court.

## DISCUSSION

Edge contends that this case should be remanded for any of three reasons. First, it argues that this action is not "related to" the Debtors' bankruptcies, so there is no federal subject matter jurisdiction. Second, Edge argues that the removal was improper because it was untimely. Third, Edge believes that this Court should abstain from hearing the case. The Court will examine each of these arguments in turn.

### A. "Related To" Jurisdiction

Removal of a case from state to federal court is permissible if the federal court would have had jurisdiction over the case at the time of removal. *See* 28 U.S.C. § 1441. Federal law provides generally that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division em-

bracing the place where such action is pending." 28 U.S.C. § 1441(a).

Duke removed this case pursuant 28 U.S.C. § 1452 which pertains to the removal of claims related to bankruptcy cases. Section 1452 allows a party to remove a case to federal court if the district court has jurisdiction of the cause of action under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1452(a). Section 1334 gives the federal district courts exclusive jurisdiction of cases under title 11, *see* 28 U.S.C. § 1334(a), and non-exclusive jurisdiction of all civil proceedings arising under title 11, arising in cases under title 11, or related to cases under title 11, *see* 28 U.S.C. § 1334(a). Since this case is not a case under title 11, removal of this case to federal court is only proper if it is a civil proceeding arising in or related to a case under title 11.

■ Duke argues that this civil proceeding is related to the title 11 bankruptcy cases filed by the Debtors. Civil proceedings which are "related to" a bankruptcy for removal purposes include: "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *accord Arnold v. Garlock, Inc.,* 278 F.3d 426, 434 (5th Cir.2001). Duke claims that the proceeds, regardless of who has possession of them, are property of the Debtors' estates, so that any determination involving the disposition of the proceeds would have an effect on the bankruptcy estates. Therefore, this action would be the second type of "related to" proceeding set out by the Supreme Court.

■ Within the Fifth Circuit, the test for whether a proceeding properly invokes federal bankruptcy "related to" jurisdiction is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Arnold,* 278 F.3d at 434 (*citing In re Canion,* 196 F.3d 579, 585 (5th Cir. 1999)). The test is just whether an effect is possible; certainty, or even likelihood of such an effect is not a requirement. *Id.* Thus, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate. *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 752 (5th Cir.1995). If this action affects property owned by the Debtors, even if Edge is a valid creditor with a claim to that property, the disposition of that property impacts the estates' ability to manage its own property and this action is "related to" the Debtors' bankruptcies.

■ Duke contends that the proceeds at issue must be property of the Debtors. The provision of the Texas Business & Commerce Code cited by Edge for the proposition that it has a lien on the proceeds, § 9.343 [1], provides an automatically perfected lien on the proceeds "owned by, received by, or due to the first purchaser" of oil or gas. Tex. Bus. & Com. Code § 9.343. Assuming that Edge is correct that it has a producer's lien as security for its sale of gas to the Debtors, that lien only attaches to proceeds that belong to the

---

1. Duke correctly points out that § 9.343 did not become effective until July 1, 2001, which was after the gas sales at issue in this action. It replaced former § 9.319. However, the State Bar Committee Comment on the amendment states that the substantive con-

tent of the rule was not changed, but remains the same as the former section. Also, neither party has argued that this discussion would be different under the former section, and both parties use the current section, § 9.343, in their briefing.

Debtors as the first purchasers. Duke may have possession of such proceeds if they are still due to the first purchasers, but that doesn't change the fact that they are property of the Debtors in the form of accounts receivable. It is the very connection to the Debtors that gives rise to Edge's security interest in the proceeds under the statutory provision.

Accordingly, Edge is seeking to enforce its security interest in property owned by the Debtors that may be in Duke's possession. Such an action impacts the bankruptcy estates and is therefore "related to" the bankruptcy cases.

## B. Timeliness of Removal

Next, Edge argues that Duke's removal was improper because it was untimely. The timeliness of the removal of an action that is related to a bankruptcy proceeding is governed by Federal Rule of Bankruptcy Procedure 9027. Rule 9027 provides that if the civil action is initiated after the commencement of the bankruptcy case, the notice of removal must be filed within 30 days of receiving either the complaint, or the summons if the complaint did not accompany the summons. *See* FED. R. BANKR. P. 9027(a)(3). Alternatively, if the civil action was initiated before commencement of the bankruptcy case, the notice of removal must be filed within the longest of 90 days of the order for relief [2], 30 days of an order terminating a stay, or 30 days after the qualification of a chapter 11 trustee but not later than 180 days after the order for relief. *See* FED. R. BANKR. P. 9027(a)(2).

Duke concedes that it failed to file the notice of removal within the time period applicable for the bankruptcy cases that were already underway at the time Edge filed the current action. However, Duke does argue that it met the test set out in Rule 9027(a)(2) for removing actions related to bankruptcy cases initiated after the civil action. This civil action was originally filed on September 5, 2001. Then, on March 4, 2002, Aurion Technologies ("Aurion"), one of the Debtors, filed a voluntary petition for bankruptcy. Duke filed its notice of removal on May 17, 2002, within 90 days of the order for relief in the Aurion bankruptcy case.

Edge contends that the current action is not "related to" the Aurion bankruptcy case, making it irrelevant that Duke filed its notice of removal within 90 days of the order for relief in that particular case. Duke claims that Aurion received money from Duke in payment for gas deliveries during the relevant time period. It appears that Duke and Aurion disagree about whether these funds belong to Aurion or to Duke.[3] Edge is also contesting whether payments made by Duke to the various Debtors constitute payments for gas deliveries, which would belong to the Debtors as proceeds of a sale by a first purchaser subject to Edge's lien, or were monies paid that can not legally constitute payments for gas deliveries given the timing of the payments, which would belong to Duke even though they are in Aurion's possession. Therefore, both cases involve the same determination of the character of the funds paid by Duke to the Debtors, including Aurion, in order to determine who owns the money. A determination of whether the money is or is not property of Aurion could have a conceivable effect on Aurion's bankruptcy estate, either positively or negatively. Therefore, this action

---

2. An order for relief is the date of the filing of a voluntary petition or the entry of an order granting an involuntary petition.

3. Duke has brought a suit against Aurion in state court to recover funds Duke disbursed that Aurion received.

is sufficiently "related to" Aurion's bankruptcy case to find that Duke satisfied Rule 9027(a)(2) and Duke's removal was timely.

## C. Abstention

Edge believes that even if this action is related to a bankruptcy proceeding and was timely removed, this Court should abstain from hearing it. 28 U.S.C. § 1334(c)(1) provides for equitable abstention in cases that are related to bankruptcy actions, and § 1334(c)(2) provides for mandatory abstention in particular cases that are related to bankruptcy actions.

Specifically, 28 U.S.C. § 1334(c) provides that:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11;

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).

The Court will first address the mandatory abstention section. One requirement in § 1334(c)(2) is that the proceeding be "related to a case under title 11, but not arising under title 11 or arising in a case under title 11." In one sense, all proceedings whether "core" or only "otherwise related" to a bankruptcy case are related proceedings. The requirement of a "related" proceeding, but one that does not "arise under" or "arise in", means that § 1334(c)(2) applies to those cases that are "otherwise related" cases under 28 U.S.C. § 157(c)(1). *See generally In re Wood,* 825 F.2d 90, 97 (5th Cir.1987). Conversely, § 1334(c)(2) does not apply to "core" proceedings set out in 28 U.S.C. § 157(b). Thus, in order to determine if mandatory abstention applies to the case at hand, the Court must determine whether this is a core proceeding or an otherwise related proceeding under 28 U.S.C. § 157. *See Chiodo v. NBC Bank–Brooks Field (In re Chiodo),* 88 B.R. 780, 782 (W.D.Tex.1988).

The non-exclusive list of "core" bankruptcy proceedings set forth in 28 U.S.C. § 157(b) includes "allowance or disallowance of claims against the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(B),(E) & (O). As established above, this is an action where Edge is seeking to enforce its lien against the proceeds of the gas sales, which are property of the estate. While this is not a direct claim against the estate because it is brought against a third-party which may be in possession of the property in question, the list in § 157 is not exclusive and this claim is similar enough to a claim against the estate to arguably label it a core proceeding. Regardless, Edge is seeking to enforce its lien on the proceeds, which, if Edge prevails, would necessarily involve an order to turn over property of the Debtors' estate—which falls under subsection (E). Such a disposition of estate property also falls under the catch-all subsection (O) covering liquidation of any estate assets and adjustments to the rela-

tionship which exists between the Debtors, as owners of property, and Edge, as a secured creditor with an interest in the Debtors' property. Therefore, this action is a core proceeding in accordance with 28 U.S.C. § 157(b) and mandatory abstention does not apply.

 Since the Court finds this to be a matter within the bankruptcy court's "core" jurisdiction, the decision whether to abstain from hearing it lies within the Court's discretion. *See In re Southmark Corp.,* 163 F.3d 925, 932 (5th Cir.1999). However, the Court does not feel that abstention would be appropriate in this matter. This is a matter that will have a direct effect on several issues in bankruptcy actions that are currently proceeding in the Northern District of Texas. Congress has expressed its intent that bankruptcy matters be handled exclusively in a federal forum. *See* 28 U.S.C. § 1334; *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 913 (9th Cir.1996). In short, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp.,* 514 U.S. at 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)).

This action involves complex factual determinations that can be most efficiently and expeditiously determined by the bankruptcy court overseeing the Debtors' bankruptcy actions. Furthermore, there is a significant risk of inconsistent adjudications if the state court and the bankruptcy court reached opposite conclusions regarding the nature of the money paid out by Duke to the Debtors and/or who has possession of the "proceeds" in which Edge

claims it has a lien. The Court notes that currently there is no motion before it to transfer this case to the Northern District, but Duke has indicated in its briefing that it intends to seek such a transfer. For the reasons just stated, the Court invites the parties to file a motion to transfer this case to the district where the bankruptcy cases are proceeding.

Thus, for now, the Court declines to abstain under § 1334(c)(1).

## CONCLUSION

For the reasons given above, Edge's motion for remand is DENIED.

It is so ORDERED.

## ORDER ON MOTION FOR RECONSIDERATION

Pending before the Court are Plaintiff Edge Petroleum Operating Company, Inc.'s ("Edge") Motion for Reconsideration of its Motion to Remand and Edge's Alternative Motion to Certify Jurisdictional Question for Interlocutory Appeal to the Fifth Circuit Court of Appeals Pursuant to 28 USC § 1292(b) (Dkt.# 15). Having considered the motions, responses, and applicable law, the Court is of the opinion that the motion to reconsider should be DENIED and the alternative motion to certify an interlocutory appeal should be DENIED.

## BACKGROUND[1]

Edge is a producer of natural gas. Through an agent, Edge sold natural gas to one or more entities (the "Debtors") who then resold the gas to Duke Energy Trading & Marketing, L.L.C. ("Duke"). Duke made payments to the Debtors that

---

1. The facts recited in this section are essentially the same as the facts recited in the Court's previous order on this issue.

it believed were payments for gas it had purchased. However, Duke believed that it overpaid the Debtors for some shipments. Therefore, Duke withheld money from later payments as part of a self-help strategy to recoup the alleged overpayments.

The Debtors then began to file for bankruptcy. Edge alleges that the Debtors never paid it for gas produced and delivered to the Debtors in May and June 2001. Edge further alleges that it has a lien on the gas and the proceeds of any sale of the gas.[2] The parties dispute who currently has possession of such proceeds. It appears that Duke sold the gas and is therefore no longer in possession of the gas itself. Edge brought suit against Duke in Texas state court to recover the value of the gas from Duke. Duke claims that it has already given all of the proceeds to the Debtors that are due to the Debtors and has filed claims in the bankruptcy proceedings to recover the rest of its alleged overpayments.

On March 4, 2002, Aurion Technologies ("Aurion"), one of the entities involved in the gas deliveries and payments, filed a voluntary petition for bankruptcy. Then, on May 17, 2002, Duke removed the state court action between Edge and itself on the grounds that it was related to the Debtors' bankruptcy actions. On May 23, 2002, Edge moved for remand of this action to state court. On October 7, 2002, the Court denied Edge's motion for remand. Edge then moved the Court to reconsider its denial of the motion to remand or, alternatively, to certify the order for interlocutory appeal to the Fifth Circuit.

2. As discussed in more detail below, it is not entirely clear whether Edge believes it has a lien in the proceeds of the sale of the gas by

## DISCUSSION

### A. Motion to Reconsider

In its motion to reconsider, Edge disputes the correctness of the Court's prior rulings on "related to" jurisdiction and the timeliness of Duke's notice of removal. The Court will examine Edge's arguments on both rulings in turn.

### (1) "Related to" Jurisdiction

As discussed more fully in the Court's previous order, 28 U.S.C. §§ 1334 and 1452 give federal courts jurisdiction over actions "relating to" bankruptcy cases. One test for whether a case properly invokes federal bankruptcy "related to" jurisdiction is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir.2001) (*citing In re Canion*, 196 F.3d 579, 585 (5th Cir.1999)). In its previous order, the Court found that the action could conceivably affect the Debtors' property because Texas Business & Commerce Code § 9.343 gives Edge a statutory lien on "the identifiable proceeds of that production owned by, received by, or due to the [Debtors]." Tex. Bus. & Com. Code § 9.343(c). In its briefing on the motion for reconsideration, Edge contends that this action will not affect the Debtors, the parties in bankruptcy, because it is only a conversion action against Duke for the sale of the gas and is not an action to recover the proceeds due to the Debtors. If Edge were only pursuing a cause of action against Duke's property, this proceeding would not be related to the Debtors' bankruptcies and there would be no basis for federal jurisdiction.

Debtors to Duke, the proceeds of the sale of the gas by Duke to a third party, or both.

Section 9.343 begins by stating that "[t]his section provides a security interest in favor of interest owners, as secured parties, *to secure the obligations of the first purchaser* of oil and gas production, as debtor, to pay the purchase price." TEX. BUS. & COM. CODE § 9.343(a) (emphasis added). Section 9.343's predecessor, § 9.319, was passed to provide security protection for royalty owners and producers who were otherwise unprotected when the first purchaser of oil or gas went bankrupt. *See* Cynthia G. Grinstead, "NOTE: The Effect of Texas U.C.C. Section 9.319 on Oil and Gas Secured Transactions", 63 Tex. L.Rev. 311, 311 (1984). It provides an automatic security interest in "in oil and gas production, and also in the identifiable proceeds of that production owned by, received by, or due to *the first purchaser*." TEX. BUS. & COM. CODE § 9.343(c) (emphasis added). The security interest remains in the oil and gas itself until either (1) the first purchaser sells to a buyer in the ordinary course of business, (2) a subsequent purchaser, a "next purchaser," who is not a buyer in the ordinary course of business sells to a buyer in the ordinary course of business, or (3) a next purchaser follows one of the suggestions in § 9.343(m). *See* TEX. BUS. & COM. CODE § 9.343(e) and (m). Regardless of whether any buyer is a buyer in the ordinary course of business, the security interest in the identifiable proceeds of the oil and/or gas production that are "owned by, received by, or due to the first purchaser" continues for an unlimited time. *See* TEX. BUS. & COM. CODE § 9.343(c)(1).

In its petition, Edge alleges that it sold gas to Aurora Natural Gas, LLC ("Aurora"), one of the Debtors. This would make Aurora a first purchaser. Edge alleges that Duke then purchased the gas from Aurora and/or one of the other affiliated Debtors. This would make Duke a next purchaser. Edge further alleges that Duke was neither a buyer in the ordinary course of business, nor did it avail itself of the protective measures in § 9.343(m). If true, then Edge's security interest remained in both the gas itself and the proceeds of the sale of the gas from the Debtors to Duke ("Debtor Proceeds"). It appears that Duke then sold the gas to a buyer in the ordinary course of business. Edge claims that because it had a security interest in the gas that was collectible upon the Debtors' payment default under the gas purchase contract, Duke's sale of the gas was an unlawful conversion of Edge's collateral. Edge alleges that Duke's conversion entitles Edge, among other remedies, to the proceeds of the sale of the gas from Duke to the buyer in the ordinary course of business ("Duke Proceeds").[3]

Edge is allowed to choose whether to pursue its statutory lien on the gas or the Debtor Proceeds. *See e.g., Cohen v. Rains,* 769 S.W.2d 380, 384–85 (Tex.App.-Fort Worth, 1989, writ denied) ("when a debtor is in default a secured party is not required to elect which of these rights he wishes to pursue—he may take any permitted action or combination of actions."). However, if Edge is seeking to recover the Debtor Proceeds, regardless of what other remedies Edge may choose to pursue in addition to that remedy, then it is clear that this Court has subject matter jurisdiction in this case. If Edge has made a claim on proceeds that are either due to or in the hands of the Debtors, then it has made a claim that could conceivably affect the property of parties who are in bank-

---

**3.** Section 9.315 of the Texas Business & Commerce Code provides that "a security interest attaches to any identifiable proceeds of collat-eral." This would give Edge a security interest in the Duke Proceeds that Duke received from the sale of Edge's collateral, the gas.

ruptcy. This Court would have "related to" jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452. *See Arnold,* 278 F.3d at 434.

Edge's petition begins by stating that "[t]his is an action for recovery of the value (contract price) of a volume of Texas gas, or proceeds thereof that Edge as the producer sold, but for which it has not been paid."[4] Looking at just this statement, Edge could be seeking to recover its security interest in either the gas or the Debtor Proceeds. It is possible that Edge is just referring to the Duke Proceeds when it states that it is seeking to recover proceeds from the gas, but there is nothing in the statement to limit Edge's claims in that manner. In paragraph 9 of the petition, Edge expressly references the statutory lien created by § 9.343. Edge states in this paragraph that the statutory lien creates a security interest which attaches "to and in the gas, and continues to attach to the gas and the proceeds of the disposition of the gas" until cut off by either full payment to Edge or the purchase of the gas by a bona fide purchaser in the ordinary course of business.[5] Furthermore, in paragraph 18, Edge refers to "the security interest and statutory lien in the Gas or proceeds."[6] Such statements provide sufficient notice for Edge to pursue the Debtor Proceeds in this action.

If Edge chooses to not pursue the § 9.343 statutory lien on the Debtor Proceeds and only proceed on its lien on the gas itself, then the Debtors' property will not be directly affected.[7] However, given the petition currently before the Court, Edge is allowed to pursue the Debtor Pro-

ceeds. Therefore, in the absence of any limitation on Edge's pursuit of those particular proceeds, Debtors' property could conceivably be affected.

Accordingly, Plaintiff's motion for reconsideration of the Court's ruling on this issue is denied.

**(2) Timeliness of Duke's Removal**

In its previous order, the Court found that Duke's removal was timely because Duke filed its notice of removal within 90 days of the date that Aurion filed for bankruptcy. *See* FED. R. BANKR. P. 9027(a)(2). Edge argues that this ruling was incorrect because this action is not related to Aurion's bankruptcy. Most of Edge's arguments on this issue are merely restatements of its earlier contentions that this action is not related to any of the Debtors because Edge is just seeking to recover on the gas itself. However, as discussed above, Edge's petition is not clearly limited to just an action against the gas itself, but gives Edge the ability to pursue the Debtor Proceeds as well. Thus, the action could conceivably affect the Debtors' bankruptcy estates.

Edge also attempts to distinguish the Debtors who filed earlier bankruptcies from Aurion who filed the bankruptcy closest in time to Duke's notice of removal. Nothing in the evidence before the Court suggests that such distinctions are warranted though. Edge's own petition alleges that Aurora, the entity that contracted with Edge, assigned its rights under the contract to various entities related to Aurora. This group is the group referred to

---

**4.** Dkt. # 1, Index # A2 (Pl.'s Original Pet.).

**5.** *See id.*

**6.** *See id.*

**7.** A suit by Edge against only Duke to enforce the lien on the gas itself would not directly

affect the Debtors, but may give rise to additional claims by Duke against the Debtors for reimbursement. If so, even a suit to enforce the lien on the gas itself could indirectly affect the property of the Debtors.

collectively as the Debtors and includes Aurion. Therefore, Edge itself admits that the entities were financially interrelated and actions affecting one may have affected others. From the evidence before the Court, it is not clear which of the Debtors might have a claim to the Debtor Proceeds from the sale or sales to Duke. The evidence before the Court does indicate that Duke and Aurion disagree about whether at least some of the proceeds in question belong to Aurion or to Duke.[8] Until the finances of the various, related entities are untangled, it appears likely that the Debtor Proceeds, or a portion thereof, are the property of Aurion. As the Court can not draw any relevant distinctions among the Debtors based on the evidence before it, any action affecting the Debtor Proceeds can be construed as affecting Aurion for purposes of finding that Duke's notice of removal was timely filed.

Having found no error in the Court's earlier ruling on this point, Plaintiff's motion for reconsideration on the timeliness issue is also denied.

**B. Motion to Certify Jurisdictional Question for Appeal**

█ It appears that the primary disagreement between Edge and the Court regarding federal subject matter jurisdiction in this matter is not a disagreement about the law, but rather an interpretative disagreement about what claims Edge has brought in its petition. Thus, this is not an appropriate issue for an interlocutory appeal to the Fifth Circuit. Accordingly, Edge's motion to certify the jurisdictional question for interlocutory appeal is denied.

### CONCLUSION

For the reasons given above, Edge's motion for reconsideration is DENIED

and motion for certification of an interlocutory appeal is DENIED.

It is so ORDERED.

---

8. Duke has brought a suit against Aurion in state court to recover funds Duke disbursed that Aurion received.